# Detweiler's Appeal.

*Widow's Statutory Allowance of $300, Lien on Lands of Decedent.—Power of Orphans' Court to enforce Payment thereof out of Lands bound by it.—Lyman's Administrator v. Byam and Wife, 2 Wright 475, affirmed.*

1. The balance of the statutory allowance to a widow, remaining after her selection and appraisement of personalty, and elected by her to be taken in real estate, becomes, after the confirmation of the report of the appraisers that the land cannot be so divided without injury, a charge upon it; and she may recover the amount from the alienees of the acceptors of the land in partition.

2. The remainder of the $300, after the widow's selection of personalty, was strictly a charge to be paid out of the lands of the decedent, and as such followed them into the hands of the purchasers, who, buying from heirs, had notice of every statutory charge.

3. The Orphans' Court has power to enforce payment of the sum charged by a decree that it be made by sale, out of the lands bound by it, in default of payment of the several amounts decreed against the purchasers in proportion to the valuation, made by the inquest, of the lots bought by them.

APPEAL from the Orphans' Court of *Bucks county*.

This was an appeal by George Detweiler, John Groff, Noah

[Detweiler's Appeal.]

Groff, John L. Shellenberger, and Abraham Moyer, from the decree of the Orphans' Court on the petition of Hannah Stout, widow of Isaac Stout, deceased, praying for a decree requiring the appellants (who were owners of the real estate late of her deceased husband) to pay to her the sum of $118.79, being the balance of the $300 due to her under the Act of April 14th 1851. The case was this:—

Hannah Stout, the widow and one of the administrators of Isaac Stout, deceased, applied to her co-administrator to have property to the value of $300 of her late husband set apart to her under the Act of April 14th 1861, and elected to take $181.20 thereof in personal property, the balance in real estate. The appraisers set apart the personal property to her, and reported that the said Isaac Stout died seised of four several tracts or lots of land in the county of Bucks; that said real estate could not be divided so as to set apart as much thereof as should amount in value to the said sum of $118.79 for the said Hannah, without injury to or spoiling the whole, and they therefore determined against a division of the real estate, or any part or tract of it. This report was presented to the Orphans' Court, and confirmed.

On the application of one of the heirs of the deceased, the Orphans' Court awarded an inquest to make partition of said real estate, and the same was divided into four purparts, and taken at the valuation by Jacob Stout and Samuel B. Stout, two of the heirs, each having two purparts. Subsequently, the said real estate was sold to George Detweiler, John Groff, Noah Groff, John L. Shellenberger, and Abraham H. Moyer, the appellants. The adjudication was made to the heirs in September 1859, who conveyed, in March 1860, to the above-named alienees.

On the 20th of September 1861, the widow presented her petition to the Orphans' Court, setting forth the above facts, praying a citation to issue to the said Jacob Stout and Samuel B. Stout, and their alienees above named, to show cause why a decree should not be made requiring them to pay to her the said sum of $118.79. The citation was served upon them, to which they filed a general demurrer. After argument, the court decreed that the said George Detweiler, John Groff, Noah Groff, John L. Shellenberger, and Abraham H. Moyer, should pay the said sum, with interest, to Hannah Stout, in the proportion of the valuation of the respective tracts held and owned by them by virtue of the conveyances from the heirs; and as to Jacob Stout and Samuel B. Stout, the citation was dismissed. From which decree, this appeal was taken by the alienees.

The case was argued in this court by *George Lear* for the appellants.

[Detweiler's Appeal.]

The opinion of the court was delivered, February 16th 1863, by Strong, J.—The petitioner in the court below was the widow of Isaac Stout. Under the Act of April 14th 1851, she had claimed to retain of the estate of her deceased husband property to the value of $300, and on the 22d of April 1859, appraisers appointed by the administrator had set apart to her, personal property valued at $181.20½. The remainder of the $300 she elected to take in real estate. The appraisers, having been unable to divide the lands of the decedent so as to set apart to her so much thereof as amounted in value to $118.79, without injury to or spoiling the whole, reported against a division, and their report and appraisement was confirmed by the Orphans' Court. Subsequently, under proceedings in partition in that court, the real estate was adjudged to Jacob Stout and Samuel B. Stout, two of the heirs, who then sold to the appellants. The remainder of the widow's $300 not having been paid, she presented her petition to the Orphans' Court, praying for a decree that it be paid by the terre-tenants of the land, and a decree *de terris* was accordingly made. From this decree the present appeal has been taken.

It admits of no question that the Act of 1851 gives to a widow a right to property of her deceased husband amounting in value to $300, absolutely and in preference to creditors and heirs. True, it is a right *sub modo*, to be asserted in the manner pointed out by the act, but it is on that account not the less perfect. If personal property be appraised and set apart to her, and if the appraisement be approved by the Orphans' Court, her ownership of it is complete. So if land be appraised for her, with the approval of the court, it becomes hers. That which was an undefined claim against the whole estate, satisfaction of which the widow may insist upon in the statutory mode, has been defined and limited to the specific land or articles of personalty. It is the remainder of the estate only that belongs to the creditors or heirs of the decedent. If, as in the case before us, where everything that the statute requires to assert the widow's right has been done, neither personal property nor land has been set off to her, to the extent of her right, creditors and heirs must stand aside until she has been satisfied. When the Orphans' Court confirmed the report of the appraisers, certifying that the land of the decedent could not be divided so as to assign to the widow such a part as was equal to $118.79, they, in effect, decreed that such sum remained a charge upon the whole real estate. It was a charge created by the Act of Assembly, and declared by the court. As it was a sum of money to be paid out of the lands, in the strictest sense a charge, it must follow the lands into whosesoever hands they may come, for a purchaser from the heir has notice of every statutory charge.

The only question then remaining is whether the Orphans' Court has power to enforce payment of the sum charged, by a decree that it be made out of the lands by sale.   In the settlement and distribution of the estates of intestates, that court has full equity jurisdiction.   Those who claim any portion of such estates may, and in most cases must, go into that court.   The power of confirming the report of appraisers, which declares that the widow is entitled to statutory allotment out of the land, is expressly given to it.   It has jurisdiction, then, over this right of the widow, and in the case now before us, it had jurisdiction in the partition.   With undoubted jurisdiction over the subject-matter, as well as the parties, why then may it not proceed in the usual course of equity practice to complete what it has rightfully begun?   It is certainly an anomaly if the court has power to make a decree, the effect of which is to fasten the charge exclusively upon the lands of the decedent, and yet is unable to enforce its decree.   We have no doubt that it has such power, and that it was properly exercised in this case.   True, it is a court of limited jurisdiction, but within the sphere of its jurisdiction, its powers are as ample as those of any court of equity.   There is nothing in Lyman's Administrator *v.* Byam and Wife, 2 Wright 475, which denies the power of the Orphans' Court to decree the sale of real estate to satisfy the widow's claim, where the lands have become exclusively chargeable with it in the mode prescribed by the Act of 1851.   The principle of that case is, that a widow who disregards the legal course of procedure, abstracts the personal property without accounting for it, demands no appraisement, and makes no election, is not entitled to the benefit of the act, and cannot recover damages from the administrator for not having an appraisement made, without accounting for the property abstracted by her.   It was in relation to such a case that it was remarked, "The Orphans' Court may order a sale (by the administrator) of a decedent's real estate to pay debts and to maintain and educate children, but not for the purpose of giving the widow her statutory allowance."   It was said of sales, in course of administration, by the personal representative.   And it was well said; for the widow does not take through the administrator, but before him.   It is what remains after her $300 are taken that he is to administer; or if she takes out of the real estate, it is only what is left after she has been satisfied, that is assets for the payment of debts or distributable among the heirs.

The decree of the Orphans' Court is affirmed, with costs.