## Mallory's Estate.

*Decedents' estates—Widow's exemption—Family relation.*

1. Where a husband removes from a distant state to Pennsylvania and resides here until his death six years thereafter, and his wife, who has had no marital relations with him for a considerable period because of his intemperance, never follows him to Pennsylvania, she is not entitled to the widow's exemption.

2. To entitle a widow to her exemption, the family relation must exist at the time of the husband's death.

3. The purpose of the widow's exemption is to tide over the necessities of the family when the head of it is stricken down.

Citation on executors to show cause why widow's exemption of $500 should not be allowed.  O. C. Centre Co.

*Joseph R. Dickerson* (of Berks County Bar), for citation.

*C. H. Ruhl* (of Berks County Bar) and *Ellis L. Orvis* (with them *W. D. Zerby*), contra.

POTTER, P. J., 17th judicial district, specially presiding, April 21, 1925.— Some years ago, just when is not material to the issues herein involved, William J. Mallory, the decedent above named, became a citizen and resident of the town of Globe, Arizona, where he became interested in and the owner of considerable mining enterprises.

On Nov. 15, 1904, he was lawfully married to Nellie Mallory, his widow and the claimant of the $500 exemption herein involved.  Their married life appears to have been a stormy one, and not long after their marriage the wife applied for and secured a divorce.  Shortly thereafter, a reconciliation was effected and they were remarried.  Sometime after this the wife again applied for a divorce, which was refused by the court having jurisdiction.

About the year 1914 he came to Rebersburg, Centre County, at the earnest solicitation of near relatives, where he continued to reside up to the time of his death, which occurred on April 29, 1921, leaving his last will and testament dated Aug 26, 1916, wherein he appointed C. O. Mallory, his brother, and Warrel F. Teel, his brother-in-law, as his executors.  In this will the decedent devises and bequeaths all his property to C. O. Mallory, Mary Jane Sholl, Isabella Cole, Kate N. Stabley and Bessie Teel, who is the wife of one of the executors, equally, which property, according to the appraisement filed, amounts to the sum of $55,640.66.  It will be noted that by the terms of this will the wife of the decedent gets nothing.  She has applied for the $500 exemption, as is provided by the laws of this State.  The executors resist her application, which has brought before us this litigation.

The question is,. Is this widow entitled to the $500 exemption or is she not?

From the records we gather that she has never resided in Pennsylvania. As we have hereinbefore stated, the married life of this couple consisted chiefly of almost a continual line of quarrels.  They were married at a time when they both had passed their meridian in life, and both had markedly fixed ideas, neither of them being willing to make any concessions to the other. This, naturally, was one source from which their marital troubles sprung.

We also gather from the records and depositions that the decedent, at times, was grossly addicted to the use, excessively, of intoxicating liquors. At times he was sober, during which periods he was industrious and gentlemanly in his conduct.  But during the periods of his carousals, which consumed the greater part of his time while at Globe, he was quarrelsome, abusive and even despicable in his demeanor, so much so that he was frequently taken up by the authorities and lodged in jail.  His intemperance

Mallory's Estate.

even went so far that he was legally declared of unsound mind and placed in an asylum at Phœnix. We say this with all due respect to the decedent, but we think the demeanor of both this husband and this wife enter very largely into the disposition of the question before us. By the intercession of his friends he was finally liberated and brought to Centre County, where he resided till the time of his death. After he became a resident of Rebersburg, which continued for a space of six years or more immediately preceding his death, he was temperate, sober and a gentleman in his demeanor, during which time his wife, the claimant, remained in the western states, she not having seen him since about the year 1914. We might add that when this decedent became a resident of Rebersburg, his financial holdings in the west were converted into cash and brought east, except the one-third thereof, which had already passed into the ownership and possession of the wife by virtue of the laws of Arizona, to which we will again refer hereinafter.

From the testimony in this case we are led to believe that this wife also indulged freely in the use of intoxicants, and that, at times at least, she lived separate and apart from him, in another dwelling in another part of the town; that she refused to live with him, refused to keep house for him or with him, and did not perform her duties in the household. That when several of his eastern friends came to visit him, she refused to get their meals for them, or to eat with them when the meals were prepared by some one else, or to do any act necessary in his household affairs. She applied for a divorce from him and secured it, they afterwards being remarried, and later applied for a second divorce, which was not granted.

In our judgment, the testimony is not clear as to whether or not she was instrumental in having him placed in the asylum. As is provided by the laws of Arizona, she did apply for and did secure to herself the one-third of his property during his lifetime, which amounted to about $33,000, this occurring while they were living in the town of Globe, in the State of Arizona.

When he was brought east to Centre County, we have some testimony tending to show that he did not want to come. We are led to believe that he was brought east in order to remedy his habits and his manner of living, which attempt seems to have been successful.

However, after he was brought east, his wife made no attempt to see him, or to again live with him, or to resume her place in his family, and it is an undisputed fact that she did not in any sense sustain the relation of wife to him and was not a member of his family since the year 1914, when he was brought east. How, then, can she successfully claim the benefit of this exemption out of his estate?

In Burkett's Estate, 5 Pa. C. C. Reps. 501, 502, Judge Rowe refused a claim very similar to the one at bar, the following being quoted from his opinion: "If a wife, in consequence of cruel and barbarous treatment endangering her life, withdraws from her husband's house and family, and remains away, *without any offer to return*, for the space of six years, during which time she is neither waiting nor willing to resume her place in the family, she may, upon his death, as his widow, have her share of his estate under the intestate laws, but not the allowance of $300 given by the Act of 1851, which the widow *belonging to the family* is to retain for the use of herself and family. For the latter is a pure gratuity, intended to provide for the immediate necessities of a family suddenly deprived of its head, and is not given to the widow as such, but to her as the surviving head of the family, and she must be either actively or constructively *in the family* at the time of her husband's death. She may be constructively in cohabitation, though she be separated tem-

porarily from her husband through his fault, if she is waiting to fill a wife's place, for then she 'hath done what she could.' But if she abandons her husband with a fixed intention not to return, she is not constructively of his family."

In the case at bar, when this decedent was brought east, he was greatly debilitated physically and mentally, whether by the use of strong drink or not. He had just been released from the asylum, chieflly on the promise of his friends from the east to remove him, to the end that he could create no more trouble in Globe. We cannot find that he in any manner deserted his wife. She well knew where he was being taken and why he was being so taken, but we can find nothing tending in any way to show that she offered to accompany him east, and from that time on she made no attempt to come to him or to resume the family relation. In fact, in about two years after his departure from Globe, she left that place and removed to Los Angeles, California, where she has since resided.

We have it well and clearly laid down by Judge Rowe in Burkett's Estate, 5 Pa. C. C. Reps. 501, that the widow must be a member of the family of the decedent at his death, unless prevented from occupying that relation by the fault of the husband, and that this exemption is simply allowed by the law to tide over the necessities of the family when the head of it is stricken down, with which doctrine we heartily coincide. We think that is the law and that is why the exemption is allowed. We cannot find that this wife was compelled to withdraw from her husband's household, and we cannot find that she was in waiting, ready to resume her place in it, without which she can clearly not claim and secure the exemption.

There is practically no difference in the enactments of 1851 and 1917 as regards this question, and the decisions applicable to the former apply with equal force to the latter.

We might cite the case of Hettrick v. Hettrick, 55 Pa. 290, as further support of our views as herein expressed, where it is also held that, to entitle the widow to her exemption, the family relation must exist at the time of the husband's death, at least in contemplation of law. See, also, Arnout's Estate, 5 D. & C. 42, as also following the *dictum* laid down in cases above cited, as well as the cases of Nye's Appeal, 126 Pa. 341; Evans's Estate, 21 Pa. Superior Ct. 430.

It is also claimed by the executors that, inasmuch as this widow was and is not a resident of the State of Pennsylvania, she is not entitled to this exemption.

This legal principle would seem to be supported by the cases of Platt's Appeal, 80 Pa. 501, and Groves's Estate, 3 Kulp, 475.

In this connection, we might also cite the cases of Coates's Estate, 6 W. N. C. 367, and Spier's Appeal, 26 Pa. 233, where it is laid down as a principle of law that where a wife does not form a part of the husband's family at the time of his death, she is not entitled to the exemption, she living in a foreign country and not ever having been a resident of this State.

We do not deem it necessary to prolong this discussion. We are satisfied that this decedent did not desert this claimant, and that it was through no fault of his that she did not form a part of his family at the time of his death. He was brought east by his friends with the hope of bettering his habits and mode of living. He and his wife parted on good terms. He was feeble in body and mind and did not want to leave Globe. She well knew his condition when he came east, but made no attempt to accompany him or even promised or offered to follow him, and during the six or seven years of his residence in

the east immediately preceding his death made no attempt to take her place in his family, and was not a member of his family when he died, but she had increased the distance between them by removing herself to California.

After carefully going over the files and testimony in the case, we must conclude that she has forfeited any right to this exemption she ever had, if in fact she ever had any.

In this proceeding before us the question of this wife participating in her husband's estate under the intestate laws of this State does not arise, although mentioned several times in the pleadings and briefs filed. We are not disposing of this question, but we cannot refrain from intimating that, as she has already received the one-third of his estate under the laws of Arizona, we fail to see just how she can again come in for another portion under the laws of Pennsylvania.

We have affirmed all the requests for findings of fact and of law as presented to us by the counsel for the executors, and make them our own with the same force and effect as if they were embodied herein.

And now, to wit, April 21, 1925, in accordance with the views as hereinbefore expressed, the application of Nellie Mallory for the $500 exemption out of the estate of her deceased husband, William J. Mallory, is refused and the citation issued at her instance is discharged, at her costs. And an exception is noted for the petitioner and a bill is sealed.

From S. D. Gettig, Bellefonte, Pa.