## Gravatt's Estate

Before Van Dusen, P. J., and Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*George A. Butler*, for exceptant.

*Louis F. Floge*, of *Schnader & Lewis*, contra.

BOLGER, J., August 30, 1944.—The question presented by these exceptions is whether, under the provisions of section 12'(*a*) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §471, an adult child who formed part of the family is entitled to exemption out of his widowed mother's estate.

Section 12(a) provides as follows:

"The widow, if any, or if there be no widow, or if she has forfeited her rights, then the children forming part of the family of any decedent . . . may retain or claim . . . property . . . to the value of five hundred dollars . . ."

The auditing judge refused to allow the claim, stating (p. 3 of supplemental adjudication):

"It would seem therefore too plain for argument that the words 'forming part of the family of any decedent dying' can mean nothing other than a male decedent, the father of the children."

It is conceded that, under the prior legislation, section 5 of the Act of April 14, 1851, P. L. 612, such claims were properly allowed. This section provided as follows:

"Section 5. That hereafter, the widow or the children of any decedent dying within this Commonwealth, testate or intestate, may retain either real or personal property belonging to said estate to the value of three hundred dollars, and the same shall not be sold, but suffered to remain for the use of the widow and family, and it shall be the duty of the executor or administrator of such decedent to have the said property appraised in the same manner as is provided in the act passed the ninth day of April, in the year one thousand eight hundred and forty-nine. . . ."

In Himes' Appeal, 94 Pa. 381, such claim was allowed, the court saying (p. 382):

"If the husband dies leaving no widow, but minor children, they are the family within the meaning of the act, and entitled to the benefit of the act. *Why should not the children of a widow be entitled to the same privilege in her estate?* They need the benefits of the act as much as any others." (Italics supplied.)

Himes' Appeal was followed in other reported cases: Appeal of Wanger, Guardian, 105 Pa. 346 (1884);

Deemer's Estate, 6 Dist. R. 30 (1896) ; Hoffman's Estate, 11 Dist. R. 551 (1901).

However, the Act of 1851 was expressly repealed by the Fiduciaries Act of 1917, sec. 63, and it is argued that the change in the phraseology of the former act, ". . . the widow or the children of any decedent . . .", to the language in the latter act, "The widow, if any, or if there be no widow, or if she has forfeited her rights, then the children forming part of the family of any decedent . . .", indicates an intention in the legislature to restrict the exemption to the estates of male decedents.

We disagree with the conclusion of the auditing judge. In our opinion the determination of the rights of parties to the exemption granted by the statute calls for a liberal interpretation—not the strict literal construction employed in the adjudication. In this view of the case, we follow the rule laid down in the recent decision in Bell's Estate, 139 Pa. Superior Ct. 11, where this very same section of the Fiduciaries Act was construed. There, the court enunciated the policy of broad rather than of literal construction, Judge Hirt saying (p. 14, 15) :

"To sustain the order disallowing the claim, it would be necessary to give the act a strict and literal construction which wholly ignores its broad purpose. The statutory exemption is a preferred claim or gift of the law prompted by consideration of public policy; *Peeble's Estate*, 157 Pa. 605, 27 A. 792, and exemption statutes have always received an interpretation consistent with their conception: *Hildebrand's Estate*, supra. These statutes have always been considered rather according to their spirit than to the letter: *Nevin's Appeal*, 47 Pa. 230. '. . . The motive of the enactment is clearly traceable, in the legislation of the State, to the family necessity': *Hettrick v. Hettrick*, 55 Pa. 290."

Himes' Appeal, supra, and the other cited cases express the policy of the law, following the Act of 1851,

to favor the allowance of the exemption to children of a deceased widow. No indication has been brought to our attention that this policy has been changed by the Fiduciaries Act of 1917 or by any act of assembly or appellate court decision. We conclude that public policy remains the same: Bell's Estate, supra.

The auditing judge points out that section 63 of the Act of 1917, supra, expressly repealed the Act of 1851, supra. However, the force of such repeal is minimized, if not entirely negated, because of the former act being a codification or revision of the then existing law. In Miles' Estate, 272 Pa. 329, 339, it was held that "when the statute under consideration is a general revision, 'the law as therein written will be deemed to be the same as it stood prior to the revision, unless we find from the statute itself, or its history, a clear intention to change it' ". This doctrine is cited with approval in Link's Estate (No. 1), 319 Pa. 513, Gordon, Secretary of Banking, v. Continental Cas. Co., 319 Pa. 555, and Kolesar v. Slovak Evangelical Union, 122 Pa. Superior Ct. 318. We fail to find such clear intention of change in the statute itself or in its history.

The wording of the two sections—that of the Act of April 14, 1851, supra, as well as that of the Fiduciaries Act of 1917—is different in other particulars, and it may well be argued that the alteration of the Act of 1851 was made, not only because of the desire to raise the exemption from $300 to $500, as stated by the commissioners, but also to make it necessary that claimant "form part of the family", and has not "forfeited her rights", requirements which were not set forth in the prior legislation. In other words, the change in phraseology does not, in my opinion, narrow the purpose of the act so as to exclude claims against the estates of female decedents. A careful study of the words "The widow, if any, or if there be no widow . . . then the children . . . of any decedent . . . " indicates an intention by the legislature that the provision should be

all-embracing, but described with an economy of words, and the words "if there be no widow" and "of any decedent" can and do extend the scope of the legislation to include the estates of female decedents.

The difficulty in interpretation lies in the ambiguity of the language of the section. The subject matter of the whole act of assembly is estates of women as well as of men. In no other part of it is there any distinction between the sexes except where specifically stated. In analyzing the section, it is clear that *its dominating note or purpose*, while not contained in the first phrase of the section, is *"the family of any decedent"*: Bell's Estate, supra. Necessarily, "family" is not restricted to the family of a deceased man, but "of any decedent". In analyzing the first phrases of the section, we note the use of the conjunction "or" which renders them separable or disjunctive. In this detached sense they provide for three possible and different situations: (1) if there be a widow; (2) if there be no widow; or (3) if there be a widow who has forfeited her rights. The opening phrase of the section is apt to be misleading, *especially if it be regarded as the principal or guiding phrase of the section.* We believe the auditing judge fell into error in so evaluating it. "The widow, if any", read alone clearly refers to the estates of men only. However, in construing the following phrase, "if there be no widow", in its disconnected position and in the light of the purpose of the section, to wit, the benefit of "the family of any decedent", it is as logical to hold that it is intended to apply to estates of deceased women as well as to those of deceased men. From all these observations and from the circumstance that the policy of the law favors this type of claim, it is reasonable to conclude that if the legislature had intended to exclude the estates of deceased females from the operation of this section, it would have expressly so provided. We consequently decide that the petitioning child of the deceased is entitled to the exemption.

It is argued by exceptant that other parts of section 12(e), (f), and (j) reveal the intention of the legislature to exclude the estates of female decedents, because none of these sections contains any provision applicable to a female decedent, that is to say, to "her", "her family", or "her death". However, it is common practice in statutes to use interchangeable number, gender, and tense. A decedent is generally referred to by the masculine gender; the word "executor" is often used to embrace executor and executrix; in criminal law the masculine gender is often used to encompass feminine defendants; indeed, in the provision under controversy the plural "children" appears, but certainly it cannot be suggested it should not include the singular, "child". This is what I choose to call economy of words, or economy of expression or description. By the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §532, it is provided:

"The singular shall include the plural, and the plural, the singular. Words used in the masculine gender shall include the feminine and neuter. Words used in the past or present tense shall include the future."

The criterion for the allowance of exemption is the existence of the family relation; age, dependence, or need is unimportant, hence criticism is often attached to the allowance of such claims where the claimants are adults and not dependent on decedent. It may not, therefore, be amiss to suggest the need for legislative elucidation on this as well as other aspects of the disputed section.

Counsel requests us to "pass directly . . . on the question as to whether the exemption is payable or allowable in addition to legacies given the claimant by the will". It is well settled that the exemption is in addition to any benefit conferred by either will or the intestate law: Compher v. Compher et al., 25 Pa. 31; unless the claimant accept a legacy which is given expressly in lieu of the exemption: Snider's Estate, 174

Pa. 620. It is a separate provision passed by the legislature to make immediate provision for the wants of the family when the head of it is removed by death.

The exceptions are sustained, the claim of Harry D. Gravatt to the exemption of $500 is allowed, and the supplemental adjudication is so modified and as modified is confirmed absolutely.

### Dissenting opinion

LADNER, J., dissenting.—I dissent for the reasons appearing in the following extracts of my supplemental adjudication:

As stated in my original adjudication, the matter comes before me on a petition filed December 18, 1942, entitled, "Petition for exemption of child of decedent". Petitioner is an adult son of the deceased widow and is neither incompetent nor suffering from any incapacity. This petition, filed with the court in banc, was referred to the auditing judge to dispose of in connection with the audit of the decedent's account.

At the hearing thereon, Mr. Floge, on behalf of Schnader & Lewis, attorneys for the accountant and trustee under the will of the decedent, objected to the petition being allowed. He contended that, whereas under the old Act of April 14, 1851, P. L. 612, sec. 5, a child could claim the exemption out of a widowed mother's estate (see Himes' Appeal, 94 Pa. 381 (1880), Appeal of Wanger, Guardian, 105 Pa. 346 (1884), Deemer's Estate, 6 Dist. R. 30 (1896), Hoffman's Estate, 11 Dist. R. 551 (1901)), this is no longer so because the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 12, 20 PS §471, has changed the language of the older act, now expressly repealed; that there is no decision similarly interpreting the new act. I find that the old Act of 1851 with its amendments and supplements was expressly repealed by the Fiduciaries Act of 1917, sec. 63. The repealed act provided that "the widow or the children of any decedent dying within this Common-

wealth, testate or intestate, may retain either real or personal property belonging to said estate to the value of three hundred dollars", etc. The peculiar language used by these acts was readily susceptible of interpretation that two parallel rights were given, one to the widow and one to the children. Of course, the widow could only be the widow of a male decedent, but the children could be children surviving either a father or mother. This gave some ground to the earlier decisions which rule that a widow's children may claim the exemption out of a widowed mother's estate. However, section 12 (*a*) of the Fiduciaries Act of 1917 reads differently. It reads "The widow, if any, or if there be no widow, or if she has forfeited her rights, then the children forming part of the family of any decedent . . . may retain or claim . . . property . . . to the value of five hundred dollars . . .", etc. Under this act the children are given no independent right but their right would seem dependent and subordinate to the widow's exemption and conditioned on her death or her forfeiture of rights. The children are given no absolute right but a right predicated on the widow's nonexistence or failure. They take only in the alternative, that is to say, in event of nonexistence or incapability of the widow. It would seem therefore too plain for argument that the words "forming part of the family of any decedent dying" can mean nothing other than a male decedent, the father of the children.

The change in phraseology (Act of 1917) indicates a fixed purpose, so cases under prior acts are no longer authorities. The language of the Act of April 14, 1851, P. L. 612, sec. 5, hereinbefore quoted, strange as it may seem, did provoke discussion (King's Appeal, 84 Pa. 345; Himes' Appeal, 94 Pa. 381) ; and the words "children of any decedent" were held to include a child of a wife deserted by her husband, though the opinion itself speaks of her as a widow. As she might answer

by description the words "any decedent", this is the only ground upon which the opinion in Himes' Appeal, supra—and at variance with King's Appeal, supra—may be upheld. The ruling of the lower court was a sympathetic one. The act probably did not justify it. The circumstances suggested legislative action and an amendment of the law. In Hoffman's Estate, 11 Dist. R. 551, there is a similar ruling without extended discussion. The decision is really rested on Himes' Appeal, supra, though Judge Solly drew attention to the fact that in King's Appeal, 84 Pa. 345, Mr. Justice Mercur had previously interpreted the act as applicable to the estate of a *male* decedent and not to that of a wife. In this case the decedent was a widow and not a deserted wife. The decision in Wanger's Appeal, 105 Pa. 346, is on similar lines.

Prior to the Fiduciaries Act of 1917 I am informed that this court followed Himes' Appeal, supra, but since that act I find no cases in point nor do counsel in their briefs refer to any.

While it is true that adult children have been permitted to claim an exemption out of a father's estate merely because they occupied the same household (see Reed's Estate, 41 D. & C. 89), there seems to be little moral justification for upholding such claims except where the adult child is an incompetent or is incapacitated. It permits one child to get an advantage over the other merely from the accident of happening to occupy the same house with the deceased parent, and this frequently in the face of a will equally distributing the estate among *all* children. There should also be considered the fact that in some estates a claim by an adult child, fully capable of his own support, is thus interposed ahead of funeral expenses and other creditors. Legislation is greatly needed to restrict a child's exemption to cases where the children are minors or are otherwise incapacitated, or suffering from some form of incapacity, mental or physical, rendering them

unable to support themselves. In my opinion the petition for the adult child's exemption in this case out of the widowed mother's estate should be refused.