## Stokes Estate.

Argued April 11, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Hackett Mullen,* for appellant.

*John S. Lightcap,* for appellees.

OPINION BY RENO, J., July 20, 1950:

The widow of John E. Stokes appealed from the decree of the court below ordering a reappraisement of property selected by her under the widow's exemption provisions of the Fiduciaries Act of June 7, 1917, P. L. 447, §12[a], 20 P. S. §471.

The decedent died on September 29, 1942, and by his will directed conversion of his real estate and distribution of the proceeds among his wife and his two sons by a former marriage. The widow was appointed executrix. On July 22, 1943, she filed a verified list of debts

for inheritance tax purposes which included the item: "Mrs. Emma M. Stokes, widow, Widow's Exemption, $500.00."[1] She took no further steps until March 1, 1946, three years and five months after the death, when she selected a house and lot in the Borough of Latrobe, and petitioned the court to appoint appraisers. They were appointed on that day, and valued the property, *as of the date of the decedent's death,* at $3350, subject to a mortgage lien of $2839.52, leaving a net value of $510.48. The appraisement was confirmed nisi on March 19, 1946.

The sons filed exceptions alleging, first, that the widow had forfeited her rights by laches; and, second, that the valuation was "ridiculously low", asserting that at the decedent's death its market value was $6500 and presently was worth $8500.

The learned court below rejected the first exception and held that in the circumstances the widow had not unreasonably delayed her claim for the exemption. See *Davies' Est.,* 146 Pa. Superior Ct. 7, 21 A. 2d 517. This phase of the case is not before us.

It sustained the second exception, stating: "However, the same concept of equity which excuses the delay of three years and five months from the date of her husband's death, will not allow the widow to take advantage of that delay for her own enrichment." It held that an appraisement should be made "as of March 1, 1946, the date on which the widow first claimed her exemption . . ." Accordingly, the matter was "referred back to the appraisers to appraise the property selected by the widow as of its value on March 1, 1946." The order in effect denied confirmation of the appraisement,

---

[1] Inclusion of this item in the affidavit for inheritance tax purposes did not constitute a valid claim for her widow's exemption. *Wraught Est.,* 347 Pa. 165, 32 A. 2d 8; *Schwartz Est.,* 166 Pa. Superior Ct. 459, 71 A. 2d 831.

and is here regarded as a definitive decree. See *Rigg's Est.*, 48 Pa. Superior Ct. 402.

As indicated, the court grounded its decision upon the broad principle that he who seeks equity must do equity. However valid that position may be, it is not necessary to rest decision upon it. The rule is that the appraisement shall be made as of the date when the widow requests the appointment of appraisers.

The industry of counsel and our own research have not uncovered a case in which the appellate courts or the lower courts have dealt with this precise question. The Act of 1917 does not provide a categorical answer to the problem.[2] But the underlying and guiding principles have been definitely declared in a host of cases. The exemption has been variously described: a gratuity, *Cramm's Est.*, 127 Pa. Superior Ct. 446, 193 A. 135, affirmed 329 Pa. 528, 198 A. 653; "a preferred claim or gift of the law, prompted by considerations of public policy", *Peebles's Est.*, 157 Pa. 605, 609, 27 A. 792; an independent bounty whereby the exempted property is withdrawn from the estate and the general course of administration. *Compher v. Compher*, 25 Pa. 31. It is not an estate which passes to the widow by will or under the intestate laws. It is an inchoate right of the widow in her husband's estate which becomes complete only when the exemption is claimed and allowed. *Hildebrand's Est.*, 262 Pa. 112, 104 A. 866; *Murray Est.*, 158 Pa. Superior Ct. 504, 45 A. 2d 411.

Moreover, the right is a personal privilege which she may waive, and failure to demand an appraisement is a waiver. *Davis's Appeal*, 34 Pa. 256. "The right under the statute is a privilege to retain, and not an absolute

---

[2] The Fiduciaries Act of April 18, 1949, P. L. 512, §213, 20 P. S. §320.213, explicitly provides: "The appraisers . . . shall fix the value of the real estate as of the date of presenting the petition for their appointment . . ."

transfer of part of the estate": *Machemer's Est.*, 140 Pa. 544, 548, 21 A. 441. "Her right to have any exempted property depends entirely upon her claiming it": *Kerns' Appeal,* 120 Pa. 523, 531, 14 A. 435. It follows that title to property does not vest in her until it has been selected and claimed, and the appraisement of it has been confirmed. *Runyan's Appeal,* 27 Pa. 121. The confirmation "is the foundation of the widow's right—it forms her very title to the property": *Sellers's Est.,* 82 Pa. 153, 156, where earlier cases are cited and reviewed. Cf. *Greenawalt's Est.,* 16 Pa. Superior Ct. 263; *Detweiler's Appeal,* 44 Pa. 243.

Since the property remains in and is not withdrawn from the husband's estate until it has been selected by the widow and appraised, gains in value while title remains in the husband's estate accrue to the heirs, legatees, devisees, or creditors and they also bear all losses. The "value" to which the Act of 1917, supra, refers is the market value at the time of taking, which in estates, subject to the Fiduciaries Act of 1949, supra, note 2, is "the date of presenting the petition for their [appraisers] appointment." The objective which the legislature sought by the enactment of the widow's exemptive legislation was immediate provision for her necessities. *Hettrick v. Hettrick,* 55 Pa. 290, relied upon in *Bell's Est.,* 139 Pa. Superior Ct. 11, 10 A. 2d 835, where Judge HIRT collated many relevant cases. Having that in contemplation as its prime purpose, it may be safely asserted that it was not within the intention of the legislature that the Act should be utilized by the widow as a method of depriving heirs and devisees of increments, by postponing presentation of her claim until the market had shown an increase in value.

Appellant stands solely upon a rule of the court below which provides: *"Appraisement shall be made as of the date of death of decedent,* after giving notice of the time and place of making same to all parties in

interest by registered mail." (Emphasis added.) The answer to the contention is two-fold. Considered as an attempt to enact substantive law in a rule regulating procedure, it cannot be sanctioned. The power of the Orphans' Court to adopt rules is limited to "such rules for regulating the *practice* thereof." Orphans' Court Act of June 7, 1917, P. L. 363, §10, 20 P. S. §2271. (Emphasis added.) The section does not authorize adoption of substantive rules of law.[3] Howbeit, the court which makes the rule may interpret it, determine whether it shall be rigidly enforced, and in a proper case may suspend or disregard it in order that injustice be prevented. *McFadden v. Pennzoil Co.,* 326 Pa. 277, 191 A. 584. The court below wisely refused to enforce the rule.

Decree affirmed; costs to be paid by the estate.

---

[3] The Orphans' Court Rules, adopted by the Supreme Court, effective the first Monday of July, 1943, also provide that orphans' courts may "adopt local rules regulating *practice and procedure . . .*" 345 Pa. lx. (Emphasis added.)