## Sivak Estate.

Argued October 2, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Samuel R. DiFrancesco,* with him *DiFrancesco & DiFrancesco,* for appellant.

*Reginald L. Pawlowski,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 26, 1962:

Mike Sewalk* died April 28, 1961, leaving a will dated February 18, 1960, in which he gave all of his estate to his six named children.** Not including his Optional Savings Share Account in the Slovenian Savings and Loan Association, which amounted to $3,598, Mike Sewalk's estate consisted solely of real estate valued at $8,100.

Claimant, Chester Sewalk, one of testator's sons, appeals from a decree of the Orphans' Court which awarded the aforesaid "Optional Savings Share Account" to the executor of Mike Sewalk. The Orphans' Court held that claimant had failed to prove a gift inter vivos or a gift mortis causa to him.

This savings share account was taken out by the decedent on *September 19, 1956.* The *pass book* reads as follows: (Back of front cover, the following:) "SLOVENIAN SAVINGS AND LOAN ASSOCIATION, CONEMAUGH, PA. Certificate No. 4452 OPTIONAL SAVINGS SHARE ACCOUNT This certifies that Mike Sewalk or . . . is a member of Slovenian Savings and Loan Association and holds an Optional Savings Share Account of said Association, subject to its Charter and By-Laws and to the laws of the State of Pennsylvania. WITNESS the authorized signature of officer or employee this 19th

---

* The will was probated in the manner appearing in the caption. However, in the bank account, which is the subject of these proceedings, the family name is spelled Sewalk.

** According to President Judge NELSON's opinion, only five children survived the testator.

day of Sept. 1956. SLOVENIAN SAVINGS AND LOAN AS-SOCIATION ................. Authorized Signature"

A signature card was signed by Mike Sewalk when he made the original deposit on September 19, 1956. The *signature card* contained on the back a printed statement that he opened a joint deposit account and the usual language with respect to "a joint account with right of survivorship." This language was unquestionably inappropriate for and undoubtedly *inapplicable* to the aforesaid account which Mike Sewalk opened.

Thereafter (on an unascertained date) in *October, 1959,* Mike Sewalk went to the bank and saw Anton Gabrenya, the president of the bank, and told him to *add on the account the name of Chester Sewalk, the claimant.* An employee of the bank thereafter entered the name of Chester Sewalk to the pass book so that it read "Mike Sewalk or Chester Sewalk", the address remaining still that of Mike Sewalk. An employee of the bank likewise *stamped* on the pass book in the upper right hand corner of the back of the front cover "As joint tenants and not as tenants in common. Payable to either or survivor."

Chester Sewalk never signed his name to the pass book, signature card, or to any paper; and Mike Sewalk *on this occasion* did not sign his name to the pass book or to any signature card, or to any paper.

Mike Sewalk informed Chester that the latter's name had been added to his share account in the Association.

Thereafter Chester Sewalk had possession of the pass book at various intervals of time, but Mike Sewalk, his father, before and thereafter made some deposits and withdrawals—the last withdrawal was on February 14, 1961, when he withdrew $150—and on these occasions Mike Sewalk either possessed or took the pass book from Chester. Chester never made any

deposits or withdrawals and never claimed in his father's lifetime any interest in this account.

Notwithstanding the fact that Chester Sewalk never signed his name to the pass book or signature card, he contends (1) that the rules or principles applicable to cases where the signature card was signed by both the owner of the deposit or the checking or the share account and the alleged donee, are likewise applicable in this case, and (2) that as a result of the aforesaid facts, Chester's father made an inter vivos gift of the share account to him, or in the alternative a gift mortis causa.

In our recent decisions we have spelled out the requisite elements of a gift inter vivos. In *Cox Estate,* 405 Pa. 444, 448, 176 A. 2d 894, the Court said: ". . . In Amour Estate, 397 Pa. 262, 154 A. 2d 502, the Court reiterated the law laid down in Martella Estate, 390 Pa. 255, 258-259, 135 A. 2d 372, and repeated in King Estate, 387 Pa. 119, 122, 126 A. 2d 463, and said (page 265): ' " '. . . "To constitute a valid gift inter vivos . . ., two essential elements are requisite: An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein." ' " ' " Accord: *Secary Estate,* 407 Pa. 162, 180 A. 2d 572; *Balfour v. Seitz,* 392 Pa. 300, 140 A. 2d 441.

If this signature card with its phraseology, i.e., joint tenancy with right of survivorship—which *as an individual depositor* Mike Sewalk signed in *1956*—had been signed by both Mike Sewalk and his son Chester *in 1956* or in *October, 1959,* it would have established prima facie a valid inter vivos gift. In *Berdar Estate,* 404 Pa 93, 170 A. 2d 861, the Court said (page 95):

". . . When a depositor creates a joint savings account with right of survivorship, *and a signature card so stating is signed by both parties,* a prima facie inter vivos gift to the other party and of the creation of a joint tenancy with right of survivorship is established: Furjanick Estate, [375 Pa. 484, 100 A. 2d 85] ; Lochinger v. Hanlon, 348 Pa. 29, 33 A. 2d 1."

The claimant has the burden of proving a valid inter vivos gift or in the alternative a valid gift mortis causa, and this proof can be established only by evidence which is clear, direct, precise and convincing: *Secary Estate,* 407 Pa. 162, 167, 180 A. 2d 572; *Petro v. Secary Estate,* 403 Pa. 540, 170 A. 2d 325. Cf. also *Kadilak Will,* 405 Pa. 238, 243, 174 A. 2d 870.

Claimant completely and utterly failed to prove a valid gift inter vivos.

The next question is whether claimant proved by evidence which was clear, direct, precise and convincing a gift mortis causa.

On April 25, 1961, three days before his death, Mike Sewalk told a friend of his, Mike Havrilesky, that he thought he was going to die. Havrilesky then called an ambulance to take him immediately to the hospital. Sewalk then gave Havrilesky the passbook for the aforesaid share account and told him to deliver it to his son, Chester, who he "wanted to have it". Havrilesky gave it to Chester, according to some evidence, the next day, April 26th, or, according to other evidence, the day after Mike Sewalk's death. However, the date of delivery to Chester in this case is immaterial. Was this evidence sufficient to constitute a gift mortis causa?

There is no doubt that Mike Sewalk believed he was about to die and the only question was whether the delivery of the passbook, with the above instructions, was sufficient proof of an intention mortis causa, to give his son, Chester, this share account ab-

solutely or was it merely expressive of an intention that Chester should have the pass book as a matter of custody and convenience in accordance with the arrangement they had had for the last three years. The only difference between a gift inter vivos and a gift mortis causa is aptly expressed in *Titusville Trust Company v. Johnson*, 375 Pa. 493, 498, 500, 100 A. 2d 93: " ' "All gifts are necessarily inter vivos, for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift inter vivos and called donatio mortis causa. But by whatever name called the elements necessary to a complete gift are not changed. . . . In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa." '

". . . The burden of proving a gift mortis causa, like the burden of proving any inter vivos gift or claim against the estate of the decedent, is on the claimant . . . Whether the evidence meets that standard (or any other prescribed standard) of proof is always a question of law for the Court: Gerfin v. Colonial Smelting Co., 374 Pa. 66, 97 A. 2d 71; Tomayko v. Carson, 368 Pa., [368 Pa. 379, 83 A. 2d 907]; Wagner v. Somerset County Memorial Park, 372 Pa. 338, 345, 93 A. 2d 440; Stafford v. Reed, 363 Pa. 405, 407, 70 A. 2d 345." Accord: *Chadrow v. Kellman*, 378 Pa. 237, 106 A. 2d 594.

We believe the evidence of intention to make an absolute gift mortis causa to Chester is equivocal and, under all the facts and circumstances here present, is not clear, direct, precise and convincing. Cf. *Kata Estate*, 363 Pa. 539, 70 A. 2d 351; *Grigonis's Estate*, 307 Pa. 183, 160 A. 706.

Decree affirmed; each party to pay own costs.