## Beniger Estate.

374

Argued October 2, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*William C. Stillwagon,* for appellant.

*Henry J. Mahady,* with him *Jon Mark Lewis, Patrick H. Mahady,* and *Mahady & Mahady,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November 17, 1972:

Joseph Beniger died intestate on September 2, 1971. Certain events which occurred prior to his death give rise to the present controversy.

On July 20, 1971, Jennie M. Kovacs, appellee, petitioned the Orphans' Court Division of the Westmoreland County Court of Common Pleas to declare her father, Joseph Beniger, an incompetent. At this time there existed two joint bank accounts in the names of Joseph Beniger or Jennie M. Kovacs, as joint tenants with right of survivorship and right of withdrawal. One was a checking account with the Southwest National Bank of Pennsylvania in the amount of $2,113.75 and the other was a savings account with the Pittsburgh National Bank in the amount of $10,435.37. The checking account was a convenience account used to pay Joseph Beniger's bills and for his maintenance and care. Money from sources such as Social Security and rent checks went into this account. On August 2, 1971, Jennie M. Kovacs closed the savings account and placed the entire amount in the Mellon National Bank and Trust Company in her own name.

On August 24, 1971, Joseph Beniger was declared an incompetent and Jennie M. Kovacs was appointed guardian of his estate. Joseph Beniger died eight days later and Violet Pivic, appellant, his eldest daughter, was appointed administratrix of his estate. On January 7, 1972, Jennie M. Kovacs filed her account as guardian and claimed the checking account as survivor. The appellant took exception to this account. The Orphans' Court Division of the Common Pleas Court of Westmoreland County was asked to decide whether either or both accounts should be distributed to Joseph Beniger's estate. The court held that the checking account was not a gift to the appellee and should be transferred to the estate, its rationale being that, although the signature card was prima facie evidence of a gift, the evidence clearly indicated that the account was established to pay Joseph Beniger's bills and that no gift was intended. The court further held that the sav-

ings account was the subject of an inter vivos gift and, therefore, the sole property of appellee.

All parties now agree that the checking account must be made part of the estate. The sole question, therefore, is whether a joint tenant of a joint savings account with right of survivorship who closed the account and put the money in another account in her name one month prior to the death of the other joint tenant, the depositor, is entitled to keep the entire sum as a donee of an inter vivos gift.

In *Sivak Estate,* 409 Pa. 261, 264, 185 A. 2d 778, 780 (1962), this Court stated that the requisite elements of a valid inter vivos gift are: "An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein [citations omitted]." In accordance with this general proposition, we also stated in *Sivak Estate,* 409 Pa. at 265, 185 A. 2d at 780, that, ". . . when a depositor creates a joint savings account with right of survivorship *and a signature card so stating is signed by both parties,* a prima facie inter vivos gift to the other party and of the creation of a joint tenancy with right of survivorship is established [citations omitted]."

On July 2, 1969, Joseph Beniger and Jennie M. Kovacs, the appellee opened the joint savings account at the Pittsburgh National Bank and signed a signature card that provided as follows: "The balance in the account, if it shall be in the name of two individuals shall be owned by the undersigned as joint tenants with right of survivorship and not as tenants in common, the account being payable to either of them during their joint lives and upon death of one of them all right, title

and interest to the account shall vest absolutely in the survivor. Each person shall be the agent of the other to make deposits in the account or to make withdrawals from the account or give instructions regarding the account." This card established a prima facie case of a gift and the burden of proof then shifted to the appellant to show by clear, precise and convincing evidence that a gift of the joint tenancy with right of survivorship in the savings account was not intended. *Fenstermaker Estate,* 413 Pa. 645, 198 A. 2d 857 (1964).

The appellant has failed to sustain her burden of proof and to show that a gift was not intended. There was no evidence regarding the savings account as being one of convenience as was the case with the checking account. The certificates of two physicians who examined Mr. Beniger in July of 1971, which stated that he was suffering from mental disorders and the fact that he was subsequently declared an incompetent in August 1971, do not prove that he was incapable of having the necessary donative intent on July 29, 1969, when the savings account was opened and the signature card signed. Moreover, his incapabilities at the time the account was closed by appellee are irrelevant since the gift was presumptively made when the card was signed and not, as appellant contends, when the money was withdrawn.

The appellee, therefore, was a donee of a valid inter vivos gift. The complicating factor, however, is that she withdrew the entire amount from the savings account and deposited it in another account in her own name one month prior to her father's death. Appellant argues that appellee, by closing the account opened on July 29, 1969, severed the joint tenancy, thereby creating a tenancy in common with her father, the obvious result being that upon her father's death his estate was entitled to one-half of the amount.

The appellant relies on *Berhalter v. Berhalter*, 315 Pa. 225, 228, 173 Atl. 172, 173 (1934), where we enunciated the proper test to be applied in all cases involving the severance of a joint tenancy. We said: "Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual beneift of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto." This test is not limited to joint accounts opened by a husband and wife. *Carson Estate*, 431 Pa. 311, 245 A. 2d 859 (1968).

In *Berhalter* and the other cases relied on by the appellant, the party withdrawing the funds had a specific scheme in mind to deprive the other joint tenant of any use or title to the money. For example, in *Berhalter*, the wife withdrew the money determined to return to her childhood home in France and intending to take all the money with her. She had already procured her passport when her husband brought a bill to restrain her from withdrawing the money. Here, there is no evidence that the appellee withdrew the money in bad faith intending to deprive her father of the funds. Although she had petitioned the lower court on July 20, 1971, to have her father declared an incompetent, she withdrew the money prior to the adjudication that he was an incompetent. She testified that she had closed the account because the doctor had told her that Mr. Beniger was not going to live. Having cared for her father for some time prior to his death, she was aware of his worsening condition.

That appellee withdrew the money and placed it in another account in her own name is insufficient without more to justify finding she was not acting for the mutual benefit of both herself and her father. In *Cul-*

*hane's Estate,* 334 Pa. 124, 5 A. 2d 377 (1939), a joint tenant of a bank account received dividend checks made payable to either tenant upon liquidation of the bank. Subsequently she endorsed and collected the checks, putting the proceeds in a safe deposit box in her own name, prior to the other joint tenant's death, and retained the money in its entirety. This Court held that the proceeds in the safe deposit box were held in joint tenancy and refused to presume that the joint tenant intended to act unlawfully and thereby sever the joint tenancy. In the present case, as in *Culhane's Estate,* the appellee had the authority to withdraw or receive the money in the account. Even though the cases differ in how the joint tenant acquired the money, in both instances the joint tenant placed the money elsewhere in her own name retaining it in its entirety. Under the instant circumstances, therefore, the proceeds of the savings account became the sole property of the appellee.

Decree affirmed. Each party to pay own costs.