412 A.2d 833

**ESTATE of James ALLEN, Sr.**

**Appeal of William B. ALLEN and Robert Allen.**

Supreme Court of Pennsylvania.

Argued Oct. 9, 1979.

Decided March 20, 1980.

418

Donald B. McCoy, Langhorne, for appellant.

Michael H. Egnal, Philadelphia, Rosemary M. Flannery, Norristown, Peter J. Verderame, Langhorne, Anthony L. Differ, Norristown, J. Russell Gibbons, Philadelphia, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This is an appeal from a decree entered in the Court of Common Pleas of Montgomery County, Orphans' Court Divi-

sion, denying appellants' exceptions to the accounting judge's decree nisi in the estate of James Allen.

Decedent, James Allen, died testate on December 25, 1972, survived by his widow Ruth B. Allen and by three sons: Robert M. Allen and William B. Allen, appellants herein, and James Allen, Jr.

Decedent left a will, dated September 29, 1972, which, with the exception of certain specific legacies not here in controversy, disposed of his property as follows:

"FOURTH: I bequeath to my son, JAMES ALLEN, JR., the good will of my real estate business known as "Allen Brothers" . . ., along with the name, the stock in trade, fixtures, goods and effects belonging thereto and the benefit of all contracts subsisting in respect to said business, and all book debts and the Allen Brothers bank accounts except monies due me at the time of my decease and not drawn, upon his paying all debts, demands and liabilities due, or owing from or by me, in or in respect of said business. . . .

"FIFTH: Since the year 1968 I have made sundry and various transactions whereby James Allen, Jr. has received certain moneys and other property a record of which will be found among my books and records. So that all of my heirs and under my residuary clause shall receive equal shares, I direct that such advancements shall be taken into account and be deducted from his share of the residuary estate.

"SIXTH: All of the rest, residue and remainder of my estate, real personal or mixed, whatsoever kind and wheresoever situate of which I may die seized or possessed, or to which I may be entitled at my death, I give, devise and bequeath as follows:

"a. One-third thereof to my wife, RUTH B. ALLEN . . . providing she survives me.

"b. The remainder thereof in equal one-third shares, to my Sons, JAMES ALLEN, JR., WILLIAM B. ALLEN and

ROBERT M. ALLEN, per stirpes and not per capita, their heirs and assigns forever."

Named as executors were decedent's three sons.

On December 26, 1972, James Allen, Jr. filed a caveat to the will alleging lack of testamentary capacity and the exercise of undue influence upon testator by William B. Allen. A hearing was scheduled on said caveat, but in the event, an agreement was reached among the parties which was reflected in an order of court entered October 2, 1973, and which provided that the will be probated all save Paragraph FIFTH thereof and that testator's three sons be granted letters testamentary and proceed with the administration of the estate.

The three co-executors were, however, incapable of proceeding in this, their father's final charge to them, and after numerous delays and conferences, the Orphans' Court determined the administration of the estate could be facilitated, and a number of claims against the estate satisfied, only by the appointment of an auditor to state an account. An auditor was thus appointed on September 26, 1974; his account was filed on December 31, 1974, and came on for audit before the Orphans' Court on February 3, 1975. At that time numerous objections to the account were filed by the three co-executors, which came on for hearing on June 18 and 19, 1975. Also at that time a claim was filed against the estate in the amount of $857.68 for legal services provided testator during his lifetime. That claim was heard by the Orphans' Court on December 8, 1975, and ultimately approved and awarded.

The Orphans' Court issued and confirmed nisi its adjudication on September 23, 1976. Exceptions to the decree nisi were filed by appellants on October 4, 1976.[1] On December 29, 1976, argument was held before the Orphans' Court on appellants' exceptions, and on January 14, 1977, the court en

1. Appellants sought and were granted leave to file exceptions *nunc pro tunc.*

banc entered a final decree dismissing the exceptions. From that decree the instant appeal was taken.[2]

Appellants advance nine assertions of error; we address these claims *seriatim.*

Initially, appellants urge upon us that the Orphans' Court erred in awarding a claim against the estate in the amount of $857.68 for legal services performed for testator during his lifetime.

We begin by noting that "a claim against a decedent's estate can be established and proved only by evidence which is clear, direct, precise and convincing." *Petro v. Secary Estate,* 403 Pa. 540, 543, 170 A.2d 325, 327 (1961). *Accord: Carr Estate,* 436 Pa. 47, 258 A.2d 628 (1969). It is also true, as appellants argue, that the burden of proof lies upon the claimant. *Kenna Estate,* 348 Pa. 214, 34 A.2d 617 (1943).

It is also true, however, that the findings of fact by the chancellor "have the weight and effect of a jury verdict and must be accepted at the appellate level unless such findings lack evidentiary support or unless the chancellor has capriciously disbelieved evidence or abused his discretion or committed an error of law." *Smith Estate,* 454 Pa. 534, 314 A.2d 21 (1974). Moreover, the record will be reviewed in the light most favorable to the appellee. *Ziel Estate,* 467 Pa. 531, 359 A.2d 728 (1976).

Instantly, the claimant introduced into evidence time sheets, properly authenticated and admissable under the Uniform Business Records as Evidence Act.[3] The record indicates that the time sheets so introduced reflected the performance of legal services on behalf of decedent for a period of over seven years prior to his death, forty-one and one-half hours of such services for which claimant had not been compensated. Appellant William B. Allen contested the claim and testified he did not believe claimant, in his capacity as attorney, had met with decedent prior to his

2. The instant case was reassigned to the writer on November 9, 1979.

3. Act of May 4, 1939, P.L. 42, 28 P.S. § 91a-d. Repealed, Act of April 28, 1978, P.L. 202, No. 53, § 2(a). See 42 Pa.C.S.A. § 6108.

death, and that claimant could not have met with decedent on several of the dates billed as a result of decedent's illness.

Appellant's claim is without merit. The properly introduced business records clearly show time expended by claimant on decedent's behalf. Moreover, it need be but stated that the performance of legal services does not require that attorney and client be in one another's presence. We perceive no error in the Orphans' Court's finding.

Next appellants argue the court below erred in excluding from decedent's estate the proceeds of two joint savings accounts. The facts germane to this issue are as follows:

In August, 1971, two bank accounts held in decedent's name were terminated and reopened as joint savings accounts in the names of decedent and James Allen, Jr. Account one was held at Fidelity Bank, Philadelphia. Account two was held at James Baird Savings and Loan Association, also in Philadelphia. On October 3, 1972, the Fidelity Bank joint account was terminated by James Allen, Jr. who, with the proceeds of that account opened a new account in his name alone. The issue presented in this appeal is the effect of this action on decedent's interests.

The Orphans' Court ruled that the creation of a joint savings account raised the presumption of a valid *inter vivos* gift, that appellants had failed to rebut the presumption so raised, and excluded the assets of both accounts from decedent's estate. While the reasoning of the Orphans' Court was correct as far as it went, we conclude it did not go far enough and find that the ruling of the court below was in error.

It is true that generally the creation of a joint bank account, with the right of survivorship, raises the presumption of a valid *inter vivos* gift. *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972). And, also generally, the burden is upon the exceptant to demonstrate the absence of a gift. *Treitinger Estate*, 440 Pa. 616, 269 A.2d 497 (1970). Had testator in the instant case died while both his bank accounts were held jointly, the case would have turned upon the

above-recited principles of law. But an additional fact present in the instant case shifts the focus of our inquiry. That additional fact is James Allen, Jr.'s withdrawal of the funds in the Fidelity Bank and their deposit in an account in his own name.

Appellants argue that the mere act of withdrawal serves to sever the joint tenancy and creates a tenancy in common, the obvious result being that upon testator's death his estate was entitled to one-half the assets of that account. We, however, rejected such a per se analysis in *Beniger Estate*, 449 Pa. 373, 296 A.2d 773 (1972). In its stead, proceeding from the presumption of valid *inter vivos* gift, we attempt to determine whether the power of a joint tenant to withdraw the funds has been "exercised in good faith for the mutual benefit of both   .   .   . [or has been] .   .   . exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto." *Berhalter v. Berhalter*, 315 Pa. 225, 228, 173 A. 172, 173 (1934); *Beniger Estate, supra*, 449 Pa. 378, 296 A.2d 773. Moreover, "the bad faith requisite to severance of a joint tenancy will not be presumed on the basis of a withdrawal alone   .   .   .  ." *Eyer Estate*, 455 Pa. 369, 372, 317 A.2d 203, 204 (1974); *Culhane's Estate*, 334 Pa. 124, 5 A.2d 377 (1939). Rather, we review the record to determine if the action of the withdrawing tenant is in bad faith so as to terminate the conceptual unity of title which is one of the requisites of joint tenancy. *Eyer Estate, supra.*

The record in the instant case discloses that decedent had not been informed of nor did he consent to the withdrawal of the funds from the Fidelity account. Testator was "surprised" and angry when he discovered the joint account had been closed, considering that "it was his monies." Additionally, when testator discovered the Fidelity account had been closed he attempted to retrieve the bank books for both that account and the James Baird Savings and Loan account. James Allen, Jr. refused to surrender the books for either account, and the James Baird Savings

and Loan Association refused to issue a new passbook without his signature.[4]

We conclude that the record supports no finding other than that James Allen Jr.'s withdrawal of the Fidelity account funds was in bad faith and was "for the purpose of depriving [testator] of any use thereof or title thereto." *Beniger Estate, supra.* As such, his action terminated the joint tenancy, created a tenancy in common, and one-half of such funds should properly have been included in decedent's estate.

We are left with the complicating factor of determining the proper status of the James Baird account. While that account was not terminated, the record discloses decedent attempted to recover the passbook for the account but was frustrated by James, Jr. Appellants rely upon an opinion of the Philadelphia Orphans' Court—*Bailey Estate*, 22 Fid.Rep. 231 (1972)—as support for their contention that where one joint tenant unilaterally terminates one of two joint bank accounts, he relinquishes his interest in the other. But even a cursory reading of *Bailey* makes obvious that its peculiar facts and narrow holding render it inapposite to the instant case.[5] Our research has uncovered no appellate court cases on this question.

While it may well be that testator intended to, even attempted to terminate the joint tenancy, he failed to per-

4. It is true that, under our narrow scope of review, the record must be reviewed in the light most favorable to appellee. *In re Estate of Ziel*, 467 Pa. 531, 537, 359 A.2d 728 (1976). Ant the credibility of witnesses is for the hearing court. *Ziel, id.* But instantly the court below concluded that the creation of the joint tenancy raised the presumption of a valid *inter vivos* gift, and, in our opinion, erroneously ended its analysis there. The court not having reached the issue of what effect to give to James, Jr.'s termination of the account, we do not find in the court's adjudication even an implicit ruling on the credibility of appellants' testimony on this issue. In the absence of a specific finding on this issue we may conduct an independent scrutiny of the record. *Lewkowicz v. Blumish*, 442 Pa. 369, 275 A.2d 69 (1971).

5. This court does not condone the practice of parties before it stating that a case "clearly *holds*" (emphasis in appellant's brief) a principle which it clearly does not.

form the one legal act which would have given effect to his intention.[6] A joint tenancy with right of survivorship having been created and not terminated at the death of one tenant, the law is too well settled to be gainsaid. The Orphans' Court properly held that the funds passed outside the estate to the party having the right of survivorship.

Third, appellants argue that with respect to three parcels of real property the Orphans' Court's confirmation of the account and adjudication was premature and not based upon the testimony of record. The three parcels of realty, all situate in Philadelphia, were listed by the auditor in the account as filed, but were noted in the account as having been "included as memorandum only. Rents have been collected, but ownership has not been determined." In the event, ownership never was determined, and the court below, in its adjudication dismissing appellants' objections to the account, merely noted "the auditor has been informed that it is impossible to determine to whom these properties are titled and belong."

James Allen, Jr. correctly reiterates that our standard of review in appeals from decrees of the Orphans' Court is one narrowly circumscribed. We will alter such a decree only if the findings on which it rests are not supported by competent or adequate evidence or if there has been an error of law, an abuse of discretion, or a capricious disbelief of competent or credible evidence. *In re Estate of Hastings*, 479 Pa. 122, 387 A.2d 865 (1978). Instantly the only finding upon which the decree rests is that title to the realty at issue is impossible of ascertainment.

The court-appointed auditor is empowered to convene hearings, administer oaths, and take testimony. *In re Krepinevich's Estate*, 433 Pa. 78, 248 A.2d 844 (1969); Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 754.[7] Moreover, auditors are empowered to issue subpoenas with

---

6. He could, after all, have withdrawn the entire amount, and by the rationale outlined above, created a tenancy in common.

7. Repealed April 28, 1978, P.L. 202, No. 53, § 8(9). See 42 Pa.C.S.A. §§ 102, 327.

or without a clause of *duces tecum.* Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 753. The record of the instant case reveals no hearing was held to ascertain title to the realty at issue. No subpoenas were issued. There is no evidence of record which would indicate the auditor attempted to ascertain the record owners of the properties via title search. There is no evidence of record which would indicate the auditor contacted the municipal taxing authority to determine who had been paying taxes on the properties. In short, the record is barren of competent, credible evidence to support the finding that ownership of the realty is impossible of ascertainment, on which finding the decree of the Orphans' Court, in turn, rests.

On the contrary, the record contains evidence, notably, although not merely, the fact that income derived from the properties at issue was reported by decedent on his federal personal income tax returns, which could indicate ownership by testator.

In the absence of evidence to support the findings upon which the decree rests, we vacate the decree and remand for a determination, insofar as is in fact possible, of the state of decedent's interest in the contested properties.

Fourth, appellant William Allen assigns as error the finding of the Orphans' Court that advancements in the amount of $30,000 were made to William Allen during testator's lifetime. The entirety of the disposition of this issue by the court below in its adjudication is as follows:

"Suffice it to say here that the Court is under the impression that counsel for the three sons have agreed that the following advancements are conceded:

"To James, Jr.

"1971—Nova Car—$1,600.00

"1971—$20,000 of municipal bonds

"1971—100 shares of Exxon at $7,000

"To William

"1971—$20,000 of municipal bonds

"1971—$10,000 cash"

Neither the court below nor any of the parties to the instant appeal point to any place in the record of this case which would support such an impression. Our test for the existence of a family agreement is well settled. The evidence of such agreement must be clear and unambiguous, and must be binding on all parties. *In re Estate of McRea*, 475 Pa. 383, 380 A.2d 773 (1977). In light of that test, the court's "impression" of an agreement among counsel is ineffective, especially in the face of the explicit provision in testator's will.

■ As we said in *Laughlin Estate*, 354 Pa. 43, 46 A.2d 477 (1946):

"An advancement in its strict *technical* sense relates exclusively to cases of intestacy. It is an irrevocable gift by a parent to a child in anticipation of such child's future share of the parent's estate. . . . (Citations omitted.)

"In case of *testacy* where the will does not refer to advancements it is considered that the will extinguishes or merges all prior advancements. The law presumes that by making such a will testator disposed of his estate as he desired and with due consideration for the rights of those to whom advancements had been made." (Emphasis in original). *Laughlin Estate, id.,* 354 Pa. at 47, 46 A.2d at 479. *Accord, In re Sechler's Estate,* 410 Pa. 480, 190 A.2d 302 (1963).

Instantly the presumption raised by the silence of the will concerning advancements to appellant William Allen is reinforced by the fact that testator provided in the will that $28,600 in gifts made to James Allen, Jr., *were* to be considered as advancements. Thus, in view of testator's express provision for advancements to appellee and the will's silence as to advancements to appellant William, we conclude the Orphans' Court erred in finding advancements were made to appellant William Allen.

Appellants' fifth assignment of error urges that the Orphans' Court improperly approved the claim of the auditor "without scrutinizing them."

■■■ The Legislature has provided that "[A]ny person appointed by the Orphans' Court as . . . auditor . . shall be compensated by reasonable fees fixed by the division and paid from such source as it shall direct." Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 752.[8] Additionally, we have held that an auditor's compensation is to be measured by the character and volume of work done by him, the nature and difficulty of the questions involved, and the time necessarily required. *Lewis Estate*, 349 Pa. 455, 37 A.2d 559 (1944).

Instantly, in awarding the auditor his fee, the court below found that "[t]his might seem a little high but one must remember that [the auditor] was acting in a crisis setting in which time was very much of the essence, otherwise penalties would have been assessed against this estate in addition to the fact that three sons of the decedent displayed such hostility to each other that animosity made the auditor's job that much more difficult. The end result achieved by the auditor has been most satisfactory. An account has been filed promptly, other tax returns have been filed so that the auditor has saved this estate thousands of dollars. The court is certain that this administration has been advanced by his services—a result which could not have been achieved by the three warring Allen brothers. The court is satisfied that this fee is proper. . . ." We agree and discern no error in the ruling of the Orphans' Court.

Appellants' next urge upon us the impropriety of the ruling of the Orphans' Court concerning the award of executor's fees. The court below awarded $2,000 in fees to both appellant William Allen and to James Allen, Jr., and $500 to appellant Robert Allen. Appellants urge that the fees awarded were insufficient and assign the ruling of the court as error.

■■■ The rule concerning executor's fees is well settled. "The court shall allow such compensation to the personal representative as shall in the circumstances be reasonable

8. Amended April 28, 1978, P.L. 202, No. 53, § 8(7), 20 Pa.C.S.A. § 752. (Supp. 1979–80.)

and just, and may calculate such compensation on a graduated percentage." Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 3537. The amount of compensation so awarded is a matter peculiarly within the discretion of the Orphans' Court. *Strickler Estate*, 354 Pa. 276, 47 A.2d 134 (1946). And finally the true test of the amount of compensation to be awarded is the actual worth to the estate of the services rendered. *In re Reed's Estate*, 462 Pa. 336, 341 A.2d 108 (1975).

The findings of the Orphans' Court on this point are as follows:

"Commissions to fiduciaries are usually allowed for faithful, industrious and prompt administration of the estate. The Court is satisfied that in this particular case both William and James Allen provided services to the estate, albeit in the climate of great acrimony and hostility. The Court, however, refused to allow commission in the full one-third thereof and, in the exercise of a broad discretion which the Court believes resides in the Court concerning such matters, the commission of William is allowed in the sum of $2,000 and the commission of James is also allowed in the sum of $2,000, and there is a commission to Robert Allen in the sum of $500."

On the record before us, we find no abuse of discretion in the ruling of the Orphans' Court.

Appellants' seventh argument asserts that the Orphans' Court erred in not requiring itemized bills from attorneys involved in the litigation generated by the instant case and in not segregating work done for the estate from work done for the legatees. In its adjudication disposing of the objections to the accounting, the court noted that:

"Attorney's fees are listed in the sum of $19,175. The Court has been advised that counsel for the contestant and proponents have agreed to split attorney's fees on a fifty-fifty basis. The Court approves this division. The Court also is satisfied that these attorneys have more than earned their fees and the same are herewith approved and awarded."

It is true, as James Allen, Jr. argues, that the award of attorney's fees is a matter within the discretion of the Orphans' Court. It is no doubt also true that "the attorneys have done considerable work in this case, spent an enormous amount of time on it, and each prepared a number of briefs and argued questions before the court." (Brief for appellee at 13–14). But all this misperceives the gravamen of appellants' complaint, viz., that notwithstanding the amount of attorney's fees awarded, the estate should not bear the burden for work not done in its behalf.

It is well settled that co-executors may engage separate counsel whose fees may be allowed out of the estate. *Fox's Appeal*, 125 Pa. 518, 17 A. 451 (1889).

"The question, however, is not solely as to the value of services rendered by counsel, but, also, how far such services were required for the mere purposes of the settlement of the estate, outside of personal considerations affecting only the executors, and how far, therefore, compensation should come from the estate and not from the executors individually. The fact cannot be overlooked, in the present case, that the want of harmony between the executors and the disputes between them with regard to matters which concerned them simply as individuals, had much to do with the difficulties experienced by counsel in the settlement of their accounts as executors, and that it was for that reason alone that several counsel were employed, instead, as would otherwise have been the case, of but one. It would be doing manifest injustice to the eight other persons, interested as distributees in the estate to throw upon them an undue share of the expenses thus occasioned." *Id.*, 125 Pa. at 519–20, 17 A. at 452.

The above-quoted language from the syllabus of *Fox's Appeal, id.*, presents a case virtually identical to the instant appeal.[9] But for the "eight other persons" *Fox* would be

9. The above-quoted language is from the opinion and adjudication of the auditing judge, which was affirmed per curiam by this Court in *Fox*. Although this language appears in the syllabus and is thus the

identical. Instantly, however, there is but one additional interested person, the fourth residuary distributee, decedent's widow.[10] Her interest is no less compelling, however, because she is merely one and not eight, and the injustice done her no less manifest if her share of decedent's estate is improperly diminished.

Thus, we vacate the decree of the Orphans' Court and remand for a determination of such attorney's fees as were earned doing the work of the estate, and hence properly chargeable to it, and those earned on behalf of the executors *qua* legatees, and hence properly chargeable to them.

■ Appellants' eighth assignment of error challenges the propriety of a ruling by the Orphans' Court disallowing a claim for the family exemption made by appellants under color of an assignment of the rights of testator's widow.

On January 11, 1973, a writing was filed in the court below which purported to assign the rights of testator's widow under the will to appellants, William and Robert Allen. On June 22, 1973, appellants, under color of the assignment, claimed the family exemption authorized by statute. See 20 Pa.C.S.A. § 3121.

It is beyond question that the right to the family exemption is a personal privilege of the widow, and one which she may waive. Failure to claim the exemption while she survives is a waiver. *Machemer's Estate*, 140 Pa. 544, 21 A. 441 (1891); *In re Stokes' Estate*, 167 Pa.Super. 128, 74 A.2d 517 (1950). Instantly the Orphans' Court found, and our review of the record persuades us it properly found, that the surviving spouse did not claim the family exemption for herself while she lived. The widow having waived her privilege, it may not be claimed by her sons.

Finally, appellants argue that "the lower court failed to rule on numerous questions raised during trial that affect the validity of the adjudication." The "numerous questions"

statement of the case and not the opinion of the Court, we find its reasoning persuasive and adopt it here.

10. Now, the estate of decedent's widow.

so assigned, three in number, all concern issues heretofore discussed; that is, the claim for legal fees for services performed for testator while he lived, the propriety of the award of auditor's fees, and the apportionment of such fees. All of these issues have been treated, *supra*.

The decree of the Orphans' Court is vacated and the case is remanded for proceedings not inconsistent with this opinion. Each party to bear own costs.

NIX and MANDERINO, JJ., did not participate in the decision of this case.

EAGEN, C. J., concurs in the result.

ROBERTS, J., files a dissenting opinion.

ROBERTS, Justice, dissenting.

The majority concludes that of the nine issues presented, the orphans' court correctly adjudicated five and incorrectly adjudicated four. I believe all of the issues were correctly decided and would affirm the decree of the orphans' court in its entirety.

In the view of the majority, the orphans' court misapplied the law of joint bank accounts in finding a valid inter vivos gift to James Allen, Jr. Review of the record satisfies me that the joint account with right of survivorship constituted, as the orphans' court held, a valid gift. Appellant William Allen failed to establish that in withdrawing funds from the joint account, the donee, James Allen, Jr., "was not acting for the mutual benefit of himself and his father." See *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972).

The orphans' court also correctly found that appellant failed to establish that certain realty should be included in decedent's estate. Likewise I agree with the orphans' court's determination that William Allen's share must be reduced by advancements he received prior to decedent's death. Finally, I believe the orphans' court properly exercised its discretion in awarding attorneys' fees. See *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968).

434

Accordingly, the decree of the orphans' court should be affirmed without modification.