## Kalich Estate

*Arthur M. Wilson*, for plaintiffs.

*John J. Moschetta, Jr.*, for defendants.

ADJUDICATION BY BELL, J., APRIL 30, 1980:

This matter comes before the court upon plaintiffs' complaint in equity against defendants, seeking to set aside a transfer by deed from decedent, Nick Kalich, to defendants. By stipulation of counsel for both parties, this case has been consolidated with the orphans' court case of *Estate of Nick Kalich, Deceased*, concerning a joint savings account with decedent and defendant Andrew J. Kalich. Upon consideration of pleadings, testimony, and evidence presented at a non-jury trial on July 2, 1979, we make the following

*Findings of Fact*

1. Plaintiffs, Helen Fredican, Margaret Roman, Ann Pluta, George Kalich and Richard Kalich, are children and intestate heirs of decedent, Nick Kalich.

2. Defendant Andrew J. Kalich is a son of decedent. Defendant Alice Kalich is defendant Andrew J. Kalich's wife.

3. Decedent, Nick Kalich, was born in Europe. He had a fourth grade education (obtained in Europe) but no further formal education. He was, however, capable of reading and writing English, Slovak, Polish, and Russian.

4. In 1953, decedent purchased a house with a parcel of land situate in Deemston Borough, Washington County, Pennsylvania, being more fully described in Deed Book Volume 881, page 527, recorded in the Washington County Recorder of Deeds office.

5. Decedent's Deemston Borough home was located in a rural area, approximately 150 feet from defendants' home. During the approximately 25 years decedent lived in Deemston, all of the plaintiffs, except his adopted son, George Kalich, lived outside of Pennsylvania. Decedent was unable to drive and did not have access to public transportation; he relied upon defendants for his transportation.

6. On February 9, 1968, decedent and defendant Andrew J. Kalich entered into a joint savings account with a right of survivorship at the First National Bank & Trust Co. in Washington, Pennsylvania. Decedent maintained exclusive control of the savings passbook until his hospitalization on February 8, 1975.

7. In 1970, at seventy-six years of age, decedent filed a petition to adopt his step-son, plaintiff George Kalich; decedent attended and testified at the adoption hearing held before the late Patsy Marino, Judge of the Orphan's Court of Washington County, Pennsylvania.

8. Decedent conveyed his Deemston Borough home to defendants by deed dated May 5, 1971 and recorded in Deed Book Volume 1337, page 618, for no "actual consideration".

9. On March 2, 1975, while still in the hospital, decedent died. He was 81 years old.

10. From 1968 until his death in 1975, decedent was in good physical condition, mentally competent, alert, and capable of handling his own business affairs.

*Discussion*

Decedent, Nick Kalich, came to the United States from Yugoslovia, where he had obtained a fourth grade education.

In 1953, he purchased a house with some land located in the Borough of Deemston, Washington County, Pennsylvania. He was married twice and raised six children. Decedent was a laborer on the Pennsylvania Railroad and was last employed as a foreman.

The plaintiff-children of decedent reside in various locations across the United States: Helen Fredican in Hudson, New York; Margaret Roman in Daggert, California; Ann Pluta in Parma, Ohio; and George Kalich, the adopted son of decedent, in Washington, Pennsylvania. For approximately the last twenty-five years of his life, decedent lived in his home in Deemston Borough, a rural area, approximately 150 feet from his son and daughter-in-law, Andrew and Alice Kalich, defendants herein.

Decedent did not have access to public transportation and was unable to drive and therefore relied upon defendants for transportation. Otherwise, decedent was self-sufficient. He handled all of his own business affairs, which included, among other things, banking, shopping, traveling (e.g., trips to Europe and California), paying all his bills, acting as treasurer and handling the bank account of the National Slovak Society, writing his own letters (in English to his family and in Slovak to his relatives in Europe), engaging in real estate transfers, buying and selling cattle, and adopting his step-son. It was admitted at trial by all of his children that decedent was mentally competent and alert. Although he had a limited formal education, decedent could read and write four languages and actively read newspapers printed in English or Slovak.

We find that decedent was of sound mind when he established a joint banking account with defendant Andrew J. Kalich in February of 1968 and when he transferred his Deemston Borough property by deed in May of 1971. The testimony of all his children reinforces our finding that decedent was mentally competent. In addition, in 1970 he petitioned to the Orphan's Court of Washington County, to adopt his step-son, plaintiff George Kalich. In that proceeding, this court found that decedent was competent, of sound mind, and

capable of understanding the proceedings and consequences of the adoption.

On February 9, 1968, decedent, accompanied by defendant Andrew J. Kalich, went to the First National Bank & Trust Co. in Washington, Pennsylvania. Charles Ross, the bank manager, testified that decedent wanted to establish a joint savings account with his son, defendant Andrew J. Kalich. At that time, Mr. Ross explained to decedent and defendant that the passbook needed to be presented at the time of withdrawals. He also mentioned that a joint account is helpful when it is necessary for someone else to take care of one's business affairs. Mr. Ross does not recall informing decedent of the right of survivorship to the account, but stated that such a provision was in the contract for a joint savings account that decedent signed.

Defendant Andrew J. Kalich testified that before executing the contract, he read it out loud to decedent. Decedent read the contract again and Mr. Ross asked decedent if he understood it. Decedent responded affirmatively, the contract was executed, and the account was established.

It has been held that "when a depositor creates a joint account with the right of survivorship and a signature card so stating is signed by both parties, the prima facie inter vivos gift to the party and the creation of a joint tenancy with the right of survivorship is established:" *Beniger Est.*, 449 Pa. 373; *Gladowski's Est.*, 396 A.2d 631.

Furthermore, the fact that all of the money in the account was supplied by decedent, and that at all times he retained possession of the passbook, is not sufficient to overcome the presumption of an inter vivos gift by decedent to defendant Andrew J. Kalich: *Lux' Est.*, 480 Pa. 256.

In June of 1972, the Pennsylvania legislature enacted a presumption that when a joint bank account is established there is a right of survivorship: 20 Pa.C.S.A. §6304 (Supp. 1979-80). Plaintiffs assert that the statute is inapplicable because this joint account was established prior to the statute's enactment. Ordinarily, we would agree. However, in the case of *Estate of Bowser*, Pa. , 401 A.2d 733 the Supreme Court held that execution of a signature card creating a joint

savings account with a right of survivorship is sufficient to establish an inter vivos gift and the burden of proof is on the plaintiffs to prove with clear, precise and convincing evidence that the survivorship terms should be barred. This test is the same as in previous case law and as provided in the statute.

Nothing in the testimony of the bank manager supports the conclusion that decedent did not have the requisite donative intent on February 9, 1968. Furthermore, there is nothing in the record to show that decedent intended to create a "convenience account" rather than an inter vivos gift; plaintiffs have failed to meet their burden of proof of proving same: *Estate of Bowser*, page 735.

Plaintiffs argue that a confidential relationship existed between decedent and defendant Andrew J. Kalich, and that he unduly influenced decedent to create the joint account and convey the real estate. It is true that when a confidential relationship has been found to exist, the entrusted person has the burden of proving that any transaction which has inured to his benefit was free of any unique influence: *Kees vs. Green*, 365 Pa. 368; *Estate of Clark*, 467 Pa. 628. However, this court finds that no special confidential relationship existed between decedent and defendant Andrew J. Kalich. Being the only means of transportation for a person does not create a confidential relationship. Nor does the mere existence of a parent-child relationship.

Plaintiffs have the burden of proving that such a confidential relationship existed prior to the date the joint account was established. They have failed to meet this burden. One of the plaintiffs, Helen Fredican, testified that decedent trusted all of his children and relied upon all of them for advice. Also, plaintiffs asserted that defendant Andrew J. Kalich disliked his step-brother, plaintiff George Kalich, and did not approve of his adoption by decedent. Decedent, of his own volition, completed the adoption proceedings regardless of defendants' feelings. We agree with defendants that this is strong evidence rebutting any alleged undue influence that defendant Andrew J. Kalich may have exerted upon decedent.

Only six months after the adoption, by deed dated May 5, 1971, decedent conveyed his Deemston Borough real estate to

defendants. The testimony at trial revealed that decedent had discussed this conveyance with defendants on several occasions. Orville Ross, a disinterested witness and neighbor of decedent, testified that decedent had informed him that he, decedent, had given the property to "Jock" (defendant Andrew J. Kalich). Ross also testified that decedent had said the taxes on the property were being paid by defendants.

The deed was executed by decedent and witnessed, and later recorded in the Recorder of Deeds Office of Washington County in Deed Book Volume 1337, page 618. An inter vivos gift is a transfer of title by delivery to the donee with intent to pass title; donative intent must exist and delivery, either actual or constructive, must occur: 17 *Pennsylvania Law Encyclopedia*, Gifts Sec. 1. A recorded deed raises the presumption that an inter vivos gift of real estate has occurred. Plaintiffs have not shown by clear and convincing evidence that the deed should be set aside. In their complaint they allege that decedent was mentally weak, but at time of trial they admitted he was of sound mind. They argue that decedent did not understand the deed he was signing, but they admit he had previously bought and sold real estate. And as stated above, plaintiffs failed to show that a confidential relationship existed between decedent and defendants.

Because of the foregoing, we find that plaintiffs have failed to meet their burden of proof, defendants are entitled to the joint savings account established on February 9, 1968, and the deed dated May 5, 1971 should not be set aside.