In re Eva RITTER, Individually and as Administratrix of the Estate of Taazmayia M. Lang, Debtor.

Eva RITTER, Plaintiff,

v.

Teddy PENDERGRASS and Teddy Bear Productions, Inc., Defendants.

Bankruptcy No. 84–01467G.
Adv. No. 84–1390G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 8, 1985.

Lawrence Feldman, Needle, Feldman & Hereman, Jonathan H. Ganz, Philadelphia, Pa. for plaintiff/debtor Eva Ritter.

Michael L. Lehr, Robert R. Barolak, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa. for defendants, Teddy Pendergrass and Teddy Bear Productions, Inc.

## OPINION

EMIL F. GOLDHABER, Chief Judge.

The predominant issue presented to us in the case at bench is whether we should grant that portion of the defendants' motion in which they seek to dismiss two counts of a debtor's complaint, when the causes of action are brought solely in the debtor's capacity as administratrix of a decedent's estate. For the reasons expressed below, we will grant that portion of the motion and dismiss those two counts of the complaint.

The facts of this case are as follows:[1] Under chapter 11 of the Bankruptcy Code ("the Code") the debtor filed a petition for reorganization which was styled, "In re Eva Ritter, Individually and as Administratrix of the Estate of Taazmayia[2] M. Lang." Shortly after that filing the debtor commenced the instant adversary action against recording artist Teddy Pendergrass

("Pendergrass") and his production company, Teddy Bear Productions ("TBP").

In 1976, several years prior to the filing of the petition, one Taazmayia Lang ("Lang") contracted with Pendergrass to manage his career in return for 10% of his earnings. Pendergrass also gave Lang one of approximately fifty shares in TBP. At that time the debtor lent Pendergrass $15,043.00 to help launch his career as a solo artist.

Within a year of executing the management contract with Pendergrass, Lang was murdered, and her mother, the debtor, was appointed administratrix of her estate. The sole heir and beneficiary under Lang's estate is Lang's son.

In the first of the four counts of her complaint, the debtor asserts that she is still owed the $15,043.00 loan by Pendergrass. The debtor asserts in the second count of the complaint that Pendergrass has violated the management agreement by failing and refusing "to account for his earnings or pay the commissions thereon due the estate of [Lang]." Under count three the debtor contends that Pendergrass has violated a fiduciary duty to Lang's estate by failing to deal fairly with it as a minority shareholder in TBP. In count four the debtor alleges that Pendergrass's actions have been malicious and, as such, the debtor requests punitive damages.

The defendants concede that we have jurisdiction to hear the loan claim and thus they have not moved to dismiss count one of the complaint. But they have moved to dismiss the second and third counts of the complaint on the basis that any funds generated by this action would not go into the debtor's bankruptcy estate but would augment Lang's decedent's estate. The defendants posit that we have no jurisdiction to hear these two counts since there is an insufficient nexus between these claims

---

1. "At this stage of the litigation, we must accept the [plaintiff's] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Hishon v. King & Spalding,* —— U.S. ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A *Moore's Federal Practice* 12.08 (2d ed. 1982).

2. In other documents filed in this action the debtor has also spelled the name as "Taazmaya."

and the debtor's reorganization proceeding. A review of the jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Amendments"), Pub.L. No. 98–353, 98 Stat. 346 (July 10, 1984)[3] is necessary for a resolution of this question.

Under the 1984 Amendments, Congress bestowed on the federal district courts "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). The district courts also have "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." § 1334(b). On July 25, 1984, the District Court in this district entered an order referring all bankruptcy jurisdiction under § 1334(a) and (b) to the bankruptcy court but for the jurisdiction to hear "personal injury tort and wrongful death claims in bankruptcy cases...." Therefore, this bankrutpcy court has the power to administer bankruptcy proceedings under § 1334(a) and may also hear civil proceedings arising under title 11, or arising in or related to cases under title 11. In the case at bench the only ostensible jurisdictional basis for our hearing the second and third counts of the debtor's complaint is that these counts of a civil proceeding are "related" to a case under title 11.

■ Although in a colloquial sense it may be said that counts two and three are "related" to the debtor's reorganization proceeding, in a legal sense they are not. The resolution of these two counts of the complaint will have no bearing on the administration of the estate, largely because any funds generated by these two counts will go to Lang's decedent's estate rather than to the debtor's bankruptcy estate.[4] The debtor, being the mere holder of legal title to these choses in action, will witness no benefit from these claims.

■ The debtor has attempted to preclude our conclusion on this point by asserting that the second and third counts of the complaint are sufficiently related to this reorganization proceeding since the debtor will receive a commission under Pennsylvania state law from Lang's decedent's estate to the extent that the debtor, as administratrix, has augmented that estate. The debtor contends that this commission will constitute part of her bankruptcy estate, and thus provide a sufficient nexus between the second and third counts and this reorganization proceeding. While we realize that the debtor would ostensibly be entitled to a commission if she prevailed, the defendants assert that, under Pennsylvania law, the awarding of such commissions "is a matter peculiarly within the discretion of the Orphans' Court," and is to be measured by that specialized court's view of "the actual worth to the [dece-

---

**3.** Although the reorganization petition was filed on May 7, 1984, which was prior to the passage of the 1984 Amendments, the jurisdictional provisions of that statute are applicable here. That act consists of three titles. Title I deals mainly with jurisdictional and procedural matters in bankruptcy as well as the appointment of bankruptcy judges; title II authorizes the appointment of additional federal district court and circuit court judges; title III contains the bulk of the amendments to title 11 of the United States Code, which, of course, is bankruptcy. Sections 101 and 104 of title I of the 1984 Amendments altered 28 U.S.C. § 1334 and added 28 U.S.C. § 157, respectively, which now contain the jurisdictional provisions underpinning the Code. Section 122(a) of title I of the 1984 Amendments states that "[e]xcept as otherwise provided in this section, this title [Title I] and the amendments made by this title shall take effect on the date of the enactment of this Act." An exception is provided under § 122(b) for the amendment of 28 U.S.C. § 1334(c)(2) (mandatory abstention) stating that "§ 1334(c)(2) does not apply with respect to cases under title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases." Consequently, the jurisdictional provisions of 28 U.S.C. §§ 157 and 1334 apply to this case but for the terms of § 1334(c)(2).

**4.** 11 U.S.C. § 541; S.Rep. No. 95–989, 95th Cong., 2d Sess. 82–83 (1978), and H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367–69 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, at 5868–69 and 6322–25; "We note that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 2313, n. 10, 76 L.Ed.2d 515 (1983) (dicta); *In Re Cherry,* 37 B.R. 893 (Bankr.E.D.Pa.1984).

dent's] estate of the services rendered." *Estate of Allen,* 488 Pa. 415, 430, 412 A.2d 833, 840 (1980). Being often confronted with the task of awarding fees in this court, we can appreciate the discretion lodged in the Orphans' Court for the allowance of commissions and the desirability of having that court view "first hand" the litigation that will generate the commission. Consequently, we hold that the possibility that the debtor may be awarded commissions if she prevails on the second and third counts, is an insufficient link between these counts and this reorganization proceeding on which to predicate our jurisdiction.[5] These counts are properly litigated in state court where that tribunal may address the merits and, if proper, concomitantly award commissions. We will dismiss the second and third counts of the complaint.

In the fourth count of the complaint the debtor requests punitive damages. She concedes to the defendants that punitive damages generally cannot be awarded on a breach of contract action and, consequently, such damages cannot be granted if the debtor is successful on the first count of the complaint which is for breach of a loan contract. The debtor counters by asserting only that punitive damages may be granted if she prevails on the third count of the complaint. Thus, it appears that the fourth count of the complaint is parasitic of the third, and as such must suffer the same fate—dismissal.

We will accordingly enter an order granting the defendants' motion to dismiss the second, third and fourth counts of the complaint. Only the first count will remain.

---

**5.** *Bobroff v. Continental Bank,* 43 B.R. 746 (E.D. Pa.1984); 1 *Collier on Bankruptcy* ¶ 3:01[1][e]