J-S02021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF: WILLIAM F. BINNIG, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: KIMBERLY HENSEL | No. 1204 EDA 2015 |

Appeal from the Order Entered March 30, 2015
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): 12 DE of 2013

BEFORE: SHOGAN, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 04, 2016**

Kimberly Hensel appeals from the order[1] entered in the Court of Common Pleas of Philadelphia County, Orphans' Court Division, confirming the account filed by William J. Binnig, Executor of the Will of William F. Binnig, Deceased. After review, we affirm.

Decedent died on February 5, 2012, leaving a will dated October 28, 2005, which was duly probated. Letters Testamentary were issued to Binnig, Decedent's son, on February 15, 2012. Decedent was survived by Binnig and three granddaughters, Barbara Dymowski, Debra Moshinski, and Hensel, appellant herein. Decedent's will provided that Binnig was to receive half of his estate, with the other half to be divided equally among his three granddaughters. On the same date he executed his will, Decedent had also

_____

[1] While the notice of appeal in this matter states that this appeal is from the "order" entered on March 30, 2015, we note that the appeal is actually taken from an adjudication entered on that date.

executed a durable power of attorney ("POA") in which he named Binnig as his agent.

At some point in 2011, Decedent's physical and mental capacities began to fail and, in July 2011, Binnig, as agent under the POA, began paying the Decedent's bills. On August 4, 2011, Binnig, his wife, Linda, and Decedent's three granddaughters met with Gerald Clarke, Esquire, to discuss "advice and strategy concerning [Decedent's] assets and the possibility of the need for nursing home care in the near future." Stipulation of the Parties, at ¶ 2. The Decedent was not present at the meeting and was not consulted regarding the issues discussed. As a result of the discussion with Attorney Clarke, Binnig, again acting under the POA, transferred approximately $373,000 from Decedent's various accounts into a newly-opened "Medicaid Planning account" at the Police and Fire Federal Credit Union ("PFFCU"). The new account was titled solely in Binnig's name. Binnig also executed new beneficiary designations for the Decedent's life insurance and annuity policies, which had continued to list Decedent's deceased wife as primary beneficiary. Binnig changed the designations in order "to have a living beneficiary." N.T. Trial, 4/10/14, at 76.

Binnig filed two accounts before the Orphans' Court, one in his capacity as agent under the POA and another as executor of the Decedent's estate. Hensel filed objections to both accounts, which were consolidated for trial on August 10, 2014. Hensel objected to, *inter alia*, asset transfers, gifts and change of beneficiary designations made by Binnig.

After trial, the Orphans' Court issued adjudications with respect to both accounts. In its adjudication of the agency account, the court sustained objections regarding certain gifts made by Binnig to Decedent's family members; the changes made to Decedent's beneficiary designations; the "Medicaid planning" transfers made by Binnig to the PFFCU account; and certain withdrawals made by Binnig from Decedent's accounts after his death. The court voided the "Medicaid planning" transfers and beneficiary designations. No party appealed the agency adjudication.

In its adjudication of the executor's account, the court, *inter alia*, overruled Hensel's objection to Binnig's failure to account for the proceeds of Decedent's life insurance and annuity policies; found that one IRA and the savings account under PFFCU account number ****3301 were held in trust for Binnig and, thus, were non-probate assets; concluded that all funds held in Decedent's Wells Fargo account were owned jointly by Decedent and Binnig and, as such, were non-probate assets; and declined to award Hensel attorney's fees.

Hensel filed a timely appeal to the adjudication of the executor's account, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Orphans' Court issued its Rule 1925(a) opinion on September 9, 2015.

On appeal, Hensel raises the following claims for our review:

1. Whether the [Orphans' Court] committed an error in its conclusion that the PFFCU account number ****3301 was a multiple-party trust account pursuant to 20 Pa.C.S.A. [§] 6301,

*et seq*[.,] and that the funds transferred by [Binnig] from the account before and after Decedent's death belong to [Binnig] as opposed to the Estate?

2. Whether the [Orphans' Court] committed an error in its conclusion that the funds removed from the Wells Fargo Bank account [with a number ending in 3692] in the amount of $97,267.00 before the death of Decedent devolved to [Binnig]?

3. Whether the [Orphans' Court] committed an error in its failure to surcharge [Binnig] for the value of Decedent's life insurance policies in the amount of $11,000.00?

4. Whether the [Orphans' Court] committed an error in its conclusion that attorney's fees to [Hensel were] not warranted because the efforts of counsel for [Hensel] did not add new [assets] or additional funds to the estate?

5. Whether the [Orphans' Court's] award of executor's commission and additional fees was excessive under Pennsylvania case law?

Brief of Appellant, at 5-6.

Before addressing Hensel's claims, we must set forth the applicable standard of review.

Our standard of review of an [O]rphans' [C]ourt's decision is deferential. When reviewing an [O]rphans' [C]ourt decree, this Court must determine whether the record is free from legal error and whether the [O]rphans' [C]ourt's findings are supported by the record. Because the [O]rphans' [C]ourt sits as the finder of fact, it determines the credibility of the witnesses and, on review, this Court will not reverse its credibility determinations absent an abuse of discretion. However, this Court is not bound to give the same deference to the [O]rphans' [C]ourt['s] conclusions of law. Where the rules of law on which the [O]rphans' [C]ourt relied are palpably wrong or clearly inapplicable, we will reverse the court's decree. Moreover, we point out that an abuse of discretion is not merely an error of judgment. However, if in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be manifestly unreasonable or the product of partiality, prejudice, bias, or ill will, discretion has been abused.

*Estate of Sachetti*, 128 A.3d 273, 281-82 (Pa. Super. 2015) (internal citations omitted).

Hensel first asserts that the Orphans' Court erred in concluding that PFFCU account number ****3301 was a multiple-party trust account pursuant to 20 Pa.C.S.A. § 6301, *et seq.*, and that, therefore, the funds Binnig transferred from that account to the Medicaid planning account belong to Binnig rather than the Estate after the Medicaid planning transfers were voided. In support of this claim, Hensel argues that the evidence cited by the court in support of its conclusion, "Exhibit R-1," a bank statement dated February 28, 2011, on which appears the designation "ITF William J. Binnig," is insufficient to prove that account ****3301 was, in fact, a trust account. Rather, Hensel asserts that Binnig should have been required to produce "a signature card, account access agreement, a deposit agreement or any reliable evidence which proved that [account ****3301] was a multi-party trust account." Brief of Appellant, at 14. This claim is unavailing.

We note that Hensel does not challenge Exhibit R-1's authenticity. Rather, she believes that Binnig was required to provide more "reliable" evidence of the PFFCU account's ownership. However, Hensel fails to provide us with citation to pertinent authority setting forth purported standards of "reliability" necessary to prove ownership of a bank account. Although she cites to three cases allegedly supporting her claim that proof in the form of a signature card or deposit agreement is required, those cases

do not actually address evidentiary burdens related to the type or quantum of proof necessary to prove ownership of a bank account.

Here, the Orphans' Court made a factual determination that the PFFCU account statement was sufficient to prove that the funds contained therein were held in trust for Binnig. With regard to such determinations, "[w]e will not disturb the trial court's findings absent a manifest error; we may modify the decree only if the findings upon which the decree rests are unsupported by the evidence or . . . a capricious disbelief of competent evidence." **In re Estate of Eastman**, 760 A.2d 16, 18 (Pa. Super. 2000). Because the Orphans' Court's finding is supported by the record, and Hensel presented no evidence to rebut Binnig's claim of ownership other than her own belief as to what Decedent would have intended, we will not disturb the court's finding.

Hensel also claims that the Orphans' Court erred by admitting Exhibit R-1 into evidence because Binnig violated the court's pre-trial orders by failing to identify any witnesses or documents he planned to introduce at trial. However, Hensel cites no authority in support of this claim. An appellant waives an issue on appeal where she fails to a present claim with citations to relevant authority or to develop the issue in meaningful fashion capable of review. **Green Acres Rehab. & Nursing Ctr. v. Sullivan**, 113 A.3d 1261, 1267 n.4 (Pa. Super. 2015), citing **Commonwealth v. Johnson**, 985 A.2d 915 (Pa. 2009). Because Hensel has failed to develop this argument, it is waived.

Hensel also asserts that, even if Exhibit R-1 was sufficient to establish that account ****3301 was a trust account, the court was still incorrect in awarding the funds from the void Medicaid planning transfer to Binnig because the funds were not "remaining on deposit" at the time of Decedent's death as required under section 6304(b) of the Multiple Party Accounts Act ("MPAA"). Hensel further asserts that the cases relied upon by the Orphans' Court, which support the conclusion that funds transferred from a joint account may retain survivorship characteristics under certain circumstances, are inapposite to the instant matter because the account in question was not joint, but rather "in trust for" Binnig.

In its adjudication, the Orphans' Court specifically found that Binnig's actions in transferring funds from joint and trust accounts into the Medicaid planning account were improper, as they were not authorized by the POA.[2] Because Binnig lacked authority to make the transfers, the court declared them to be void, meaning they had "no legal effect." Black's Law Dictionary (10th ed. 2014). As such, the result of the court's action was to return the funds to the *status quo ante*, as if the transfers never occurred. Thus, Hensel's argument that the funds were not "remaining on deposit" at the

_____

[2] Because Hensel did not appeal the adjudication of the agency account, the record in the principal's estate case-type was not forwarded to this court. Consequently, we do not have access to a copy of the POA document and cannot confirm the correctness of the Orphans' Court's ruling as to the powers conferred by the POA. In any event, no party challenged this ruling and, as such, it is the law of the case.

time of Decedent's death is unavailing, as the court's ruling constructively returned the funds to their original state. Accordingly, she is entitled to no relief on this claim.

Next, Hensel claims that the Orphans' Court erred in concluding that the funds removed from the Wells Fargo Bank account ending in 3692 ("Wells Fargo account") in the amount of $97,267.00 before the death of Decedent devolved to Binnig. Prior to trial, the parties stipulated that the Wells Fargo account had been owned jointly by Binnig and the Decedent. They also stipulated that, as part of the Medicaid planning strategy agreed to by the parties, Binnig transferred the sum of $97,267 from the Wells Fargo account to the Medicaid planning account, titled solely in Binnig's name, at PFFCU. Hensel argues that the joint tenancy of the original account was severed when Binnig, having transferred the funds to another account, exercised bad faith by using the money for his own purposes.

The Orphans' Court found that, although Binnig removed the funds from the joint account, the joint tenancy was not severed because he used the funds for the benefit of the Decedent in good faith. We agree.

Generally, the creation of a joint bank account, with the right of survivorship, raises the presumption of a valid *inter vivos* gift. **Estate of Allen**, 412 A.2d 833, 837 (Pa. 1980), citing **Dzierski Estate**, 296 A.2d 716 (Pa. 1972). As a result, the burden of proof shifts to the contesting party to demonstrate the absence of a gift by clear, precise and convincing evidence. **Beniger Estate**, 296 A.2d 773, 776 (Pa. 1972). The fact that a joint tenant

withdraws the money and places it in another account in his own name is insufficient to sever the joint tenancy without more to justify a finding that he was not acting for the mutual benefit of both joint tenants. *Id.* at 777.

Here, Binnig, Hensel and Decedent's other granddaughters all agreed that funds from certain of Decedent's accounts would be withdrawn and re-deposited in an account in Binnig's sole name for purposes of Medicaid planning. Although the Orphans' Court ultimately concluded that Binnig lacked authority to make those transfers, Hensel provided no proof that any of the funds so transferred were used by Binnig to benefit himself. Accordingly, either the funds were restored to their original status, *see discussion supra*, at 7, or Binnig's withdrawal of the funds did not sever the joint tenancy As such, he is entitled to the proceeds remaining on deposit in the Wells Fargo account at Decedent's death, together with those funds ordered by the court to be returned to the account as a result of the court's finding that the Medicaid planning transfers were void. *See id.*

Next, Hensel claims that the Orphans' Court erred by failing to surcharge Binnig for the value of Decedent's life insurance and annuity policies. Hensel asserts that, had Binnig not altered the beneficiary designations, the proceeds of the policies would have been assets of the Decedent's estate and, thus, Binnig should be surcharged in the amount of $11,000, the value of the policies. This claim is meritless.

Here, the original primary beneficiary of Decedent's life insurance and annuity policies was his wife, who predeceased him. Believing that it would

be preferable to have a living person named as beneficiary, Binnig used his purported authority under the POA to make himself the primary beneficiary. However, the Orphans' Court concluded that the POA did not grant Binnig the authority to alter the beneficiary designation, and declared his action void. Accordingly, the beneficiary designations for both policies reverted to the original designations listed by the Decedent. In the case of the annuity policy, Exhibit P-6 indicates that the proceeds are now payable outside of the probate estate to Binnig (50%), Hensel (16.67%), Moshinski (16.67%) and Dymowski (16.67%). Thus, the proceeds were not required to be listed as an asset of the estate and no surcharge was appropriate.

With respect to Decedent's life insurance policy, neither party presented any evidence as to the identity of the beneficiary or beneficiaries entitled to the policy proceeds once the court declared Binnig's change of beneficiary void. "In general, one who seeks to surcharge a trustee bears the burden of proving that the trustee breached an applicable fiduciary duty." **Estate of Stetson**, 345 A.2d 679, 690 (Pa. 1975). Because Hensel has not proven that the insurance proceeds are estate assets, she has failed to demonstrate that Binnig's actions amounted to a breach of fiduciary duty. Accordingly, the court properly declined to impose a surcharge.

Hensel next asserts that the Orphans' Court committed an error in declining to award her attorney's fees because the efforts of her counsel did not result in additional assets or funds to the estate. We find this claim to be without merit.

We begin by noting:

> Normally, the attorney's fees for a party who files [objections] to an account are not paid from the estate. However, this general rule is subject to an exception where the estate is substantially benefitted by the efforts of an [objectant's] counsel, which have resulted in an administrator being required to include in his inventory of the estate valuable assets previously not included. In that situation, it is within the discretion of the court to compensate the [objectant's] counsel fees out of estate funds.

*In re Padezanin*, 937 A.2d 475, 484 (Pa. Super. 2007) (internal citations and punctuation omitted).

Here, Hensel's sole argument in support of the award of counsel fees stems from the Orphans' Court's surcharge of Binnig for the transfers to the Medicaid planning account and gifts made to family members. However, this surcharge was imposed in the court's adjudication of Binnig's agency account, not the executor's account. That adjudication is not before this court, as neither party filed an appeal. If Hensel believed her efforts were instrumental in restoring funds to the principal's estate, she had the opportunity to pursue them in that case. Having failed to do so, she has waived any challenge to the actions taken, or not taken, by the court in the agency adjudication. In any event, the vast majority of the funds represented by the surcharge ultimately passed to Binnig, and not the estate, by virtue of the court's determination that the funds retained their joint or "in trust for" status once the improper transfers were declared void. Thus, Hensel's actions in objecting to Binnig's actions did not substantially

- 11 -

benefit the estate. **See id.** Accordingly, she is not entitled to an award of attorney's fees and this claim is meritless.

Finally, Hensel claims that the Orphans' Court's award of executor's commission and additional fees was excessive under Pennsylvania case law. For the following reasons, we disagree.

The executor of an estate is entitled to "such compensation . . . as shall in the circumstances be reasonable and just[.]" 20 Pa.C.S.A. § 3537. The basis for determining whether compensation is reasonable depends upon the value of the services actually rendered. **In re Estate of Geniviva**, 675 A.2d 306, 312-13 (Pa. Super. 1996), citing **In re Estate of Rees**, 625 A.2d 1203 (Pa. Super. 1993). "[E]xecutors seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." **Rees**, 625 A.2d at 1206. The determination of whether the executor's fees are reasonable is left to the sound discretion of the Orphans' Court, and we will not disturb its determination absent a clear error or an abuse of discretion. **Id.** "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Jacobs v. Chatwani**, 922 A.2d 950, 960 (Pa. Super. 2007) (citation omitted).

Here, the Orphans' Court stated that the fee awarded to Binnig, the sum of $12,474.00, was approximately 4.5% of the "gross probate estate as

- 12 -

listed in the Account." Orphans' Court Opinion, 9/9/15, at 16. The "gross probate estate" set forth in the account is listed as $276,799.90, of which $12,474.00 is, in fact, approximately 4.5%. However, in its adjudication, the Court states that the estate received the gross sum of $553,425.50 from the principal's estate, and subtracted therefrom the assets determined to be non-probate, to arrive at a gross probate receipt of $202,647.94.[3] Of the gross receipt as stated in the adjudication, the executor's fee represents 6.15%.

Upon review of the record, and mindful of our deferential standard of review, we can discern no abuse of discretion on the part of the Orphans' Court in its award of the executor's commission, plus reimbursement of

_____

[3] It appears that the discrepancy between the gross receipts as stated by the accountant and those stated by the court stems from the fact that surcharges imposed in the agency account adjudication for the improper transfers of joint and "in trust for" funds to the Medicaid planning account should never have been added back into the balance on hand awarded in the agency account adjudication, as the court ultimately determined that they passed by operation of law to Binnig. The court should have addressed the nature and disposition of those funds in the context of the agency account adjudication, rather than making an inflated award to the decedent's estate and then disposing of the ownership issues in the context of the executor's accounting. This Court notes with disfavor the manner in which the Orphans' Court delayed disposition of issues that properly should have been addressed in the agency account adjudication until the adjudication of the executor's account. In doing so, the court unnecessarily complicated appellate review of a matter that should have been relatively straightforward. For his part, Binnig could have "piggy-backed" his agency account to the executor's account pursuant to 20 Pa.C.S.A. § 3501.2, thus alleviating much of the confusion caused by the piecemeal adjudication of interrelated issues.

$7,600.00 expended by Binnig in time and materials in connection with the extensive renovation of the Decedent's home in preparation for sale. *Jacobs*, *supra* ("An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion[.]")

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2016